### PENN'S AD. ET AL. VS. TOLLESON.

On a sale of lands by the master, under a decree of the court of chancery, one of the complainants, who was the preferred creditor to a large amount, interfered with and controlled the master as to the terms of sale, directing and requiring him to announce, before the sale, that the terms, as to so much of the proceeds as would be necessary to discharge the amount decreed to her, should be payment down in specie at the close of the sale—the bidders present manifested surprise at the terms, of which previous notice had not been given, and expressed their inability to comply with them, declaring that they were new and unexpected: on their remonstrance, the master, after a conversation apart with the preferred creditor, extended the time of payment to five minutes before 3 o'clock of the same day, and refused so to vary the terms as to allow sufficient time to obtain and transport the specie to the place of sale, or allow it to be paid that evening at Memphis, or on the next day at the place of sale, or at the residence of the master, or by a specie check on a solvent bank at Memphis, marked "good" by the Cashier of the bank.   The terms so required by the creditor, and announced by the master, operated as a surprise upon the bidders present, who declined to bid, stifled competition, and the creditor who was the only bidder, was enabled to purchase the lands at less than her own debt, though she was prepared to bid more, and for about half their value.   *Held*, that the conduct of the purchaser was such as the law characterizes as fraudulent, and a court of equity will not hold such a sale valid.

Although a creditor is entitled, *stricti juris*, to payment in specie, still, in ordinary business transactions, it is not usually required.

Where the terms of a decree for the sale of land, are, that the proceeds "will, after payment of costs, be applied to pay" certain specified creditors, the master would not be authorized to pay it over until the further order of the Court.

Where the purchaser at a chancery sale is not a *bona fide* purchaser, it is not necessary, in order to set aside the sale, on the application of the parties injured, that an advance on the bid, or any sum whatever should have been deposited in Court.

The practice of setting aside sales merely for the sake of an advance upon the price, which, by a series of adjudications, has grown into a system in England, has not been adopted by the courts in this country.

*Appeal from Crittenden Circuit Court in Chancery.*

Hon. GEORGE W. BEAZLEY, Circuit Judge.

WATKINS & GALLAGHER, for the appellants.

The appellants interested in this case insist that the sale should be set aside and and a re-sale ordered, because:

The terms of the sale were unusual; and therefore operated as a surprise without fault on the part of those interested. [2 *Alabama* 256.] The demand for specie was unjustifiable and oppressive; [5 *Paige Chan. Rep.* 48,] for, until the confirmation of the report, the bidder is not considered the purchaser; [11 *Ves., jr.* 559,] nor until the report is confirmed, is he compellable to complete his purchase. [2 *Ves., jr.* 336.] The court is the vendor, and has a lien on the land for the payment of the purchase money. [2 *Bland* 629; 4 *Md. Ch. Decis.* 62.] The master is the mere agent of the court; [*Freeman Ch. R.* 270,] and the court will never permit its process to be improperly used to work injustice or oppression; if such use be made of it, the court will, by virtue of its power over its officers, suitors, etc., rectify the abuse. [21 *Ala.* 650.]

The parties interested in the property have the right to expect that it will be put up and sold in the usual manner, and in a way to produce a fair competition among the persons attending the sale to bid upon the property; [9 *Paige* 259,] and that the sale should be made under such circumstances as to cause the property to bring the best price, without injury to the party entitled to the proceeds of the sale, without delaying the payment of his debt. [9 *Paige* 290.]

As no case of this kind has as yet been adjudicated before this tribunal, a glance at the practice peculiar to this proceeding may not be out of place.

We understand the English practice to be, in short, to open the biddings again and again, whenever it appears that an advance price can be obtained, and the previous purchaser is secure against loss. There are cases where, even after the confirmation of the master's report, the biddings have been opened and a re-sale ordered. The principle upon which this is done is, that the court considers itself to have greater power over the contract than it would have were the contract made

between party and party; the chief aim of the court being to obtain as great a price for the estate as can possibly be got.

Where the biddings are opened and a re-sale ordered, for the mere purpose of getting an enhanced price, it is, of course, equitable, that those interested should be secured against loss, by a deposit in the way of earnest, or a guarantee for an advanced price.

But in this country, that practice of opening the biddings as a matter of course, and which is liable to many serious objections, has never been adopted, and is rarely practiced; and when it is done, as against a purchaser, *in good faith*, a deposit or guarantee of a higher bid is required in conformity with the English practice. *Duncan vs. Dodd*, 2 *Paige* 101.

In England as well as America, sales are set aside for fraud or unfairness; and that is the ground upon which this case rests. As a matter of course, the English practice of requiring a deposit where there has been a *bona fide* sale for the mere purpose of an enhanced price, and the authorities cited in support of it can have no application to a case of this kind, where, as we contend, the purchase was not *bona fide*.

In the case of *Goldsmith vs. Osborne*, 1 *Edw. Ch. R.* 560, the master demanded payment of the bid in specie, within one hour after the close of the sale

The case of *Baring vs. Moore*, 5 *Paige Ch. Rep.* 48, in many of its features, si similar to, and must be conclusive of, the case at bar.

Mere inadequacy of price in a chancery sale, *correctly conducted*, is not of itself sufficient ground for vacating the sale; but inadequacy of price is, for the most part, regarded as the inducement to the action of the court, after the establishment of a cause deemed sufficient to warrant its nullifying interposition. *Cohen vs. Wagner*, 6 *Gill.* 236. Inadequacy of price will have its weight where there are other grounds for setting aside the sale. *Glenn vs. Clapp*, 11 *Gill. & J.* 1.

A sale made at a very inadequate price will be set aside. *Foreman vs. Hunt*, 3 *Dana* 614.

See *American Insurance Company vs. Oakley et al*, 9 *Paige* 259, to the effect that where property is *fairly* sold to a *stranger* to the suit, mere inadequacy of price will not be cause of re-sale; but all the parties interested have a right to expect that the property will be put up and sold in the usual manner, and so as to induce competition. And see 9 *Paige* 290, that the sale should be made under such circumstances as to cause the property to bring the best price, without injury to the party entitled to the proceeds of the sale by delaying the payment of his debt.

Where a *stranger* becomes a purchaser, a re sale will not be ordered for mere inadequacy of price, however gross, *unless* there be some unfair practice at the sale, or surprise on the part of those interested. *Littel vs. Zuntz*, 2 *Ala.* 256.

A misapprehension of the terms of the sale, where one party is injured, and another party, *who purchases at the sale*, is bene-fited, may be sufficient cause for setting aside the sale. *Hay, vs. Schooley*, 7 *Ham.*, 2*d part*, 48.

In special cases, though purchased in *good faith*, a re-sale will be ordered. *Duncan vs. Dodd*, 2 *Paige* 99.

Before confirmation of report of sale, a re-sale will be order-ed when it is *equitable under the peculiar circumstances of the case;* and when there is *fraud* or *misconduct* in the purchaser or any person connected with the sale—when there is *surprise* upon any party in interest, created by the purchaser or other person directing the sale—when the *interests of infants* are con-cerned in opening the sale. *Gardiner vs. Schermerhorn et al.*, 1 *Clarke Ch. R.* 101; *Ib.* 475.

As the court in these cases is the vendor, and retains a lien on the land for the purchase money; [*Anderson vs. Foulke*, 2 *Har. & G.* 346,] and as the master is but the mere agent of the court to make the sale; [*Tooley vs. Kane, S. & M. Ch. R.* 522,] and as the sale is not completed or binding, until the confirma-tion of the report; [*Webster vs. Hill*, 2 *Sneed's R.* 333; 4 *Humph.* 371, 374,] nor until confirmation, is the bidder compellable to complete his purchase; [2 *Ves., jr.* 336,] and unless the decree

empowers the master to do so, he has no authority to disburse the proceeds; [*Dent vs. Maddox*, 4 *Md.* 522,] and, as in the case at bar, there was in the decree no authority or direction for the master to pay the proceeds, or any part thereof to Mrs. Tolleson, may it not be questioned whether he had the power to insist on any payment at all of the bid to himself, either in specie, at Mrs. Tolleson's direction, or in any other mode, especially, as the possession of the lands was not then to be delivered to the purchaser. Was not the master's whole duty done, so far as the sale was concerned, when the offering was made, as directed by the decree, and the highest bid therefor noted? The decree directs him to sell the land, and *report*. See, also, 4 *Humph.* 371, 374; 13 *Wend.* 228.

FOWLER & STILLWELL, for the appellee.

Before proceeding to examine the sufficiency of the excuse of the appellants for their neglect, and the evidence adduced in support thereof, we will endeavor, and we think we can show conclusively, that the appellants did not present themselves in an attitude before the chancellor to ask for a re-sale.

The English practice of opening biddings has not been adopted in this country. That is to say, the courts here will refuse to order a re-sale in many cases, where the English courts would order it. It is said that that practice has been productive of more evil than good; hence, the reluctance of our courts to adopt it.

But still, a party applying for a re-sale, must, at least, do as much as he would be required to do in England. None of the requirements of the English rule are relaxed here, as respects the applicant for a re-sale. 3 *Johns. Ch. R.* 291, *Williamson vs. Dale;* 1 *Clarke's R.* 101, *Gardner vs. Schermerhorne;* 2 *Bland R.* 629, *Andrews vs. Scoton;* 1 *Bailey Eq. R.* 14, *Young vs. Scague;* 1 *Green Ch. R.* 214, *Seaman vs. Riggins;* 5 *Yerger R.* 230, *Henderson vs. Lowry;* 2 *McCord R.* 158, *Gordon vs. Sims;* 2 *Paige* 100, *Duncan vs. Todd.*

And there the court required a deposit of a reasonable ad-

vance on the bid, together with the purchaser's expenses. 1 *Ves., jr.* 453; 4 *Ves.* 700; 6 *ib.* 466; 6 *ib.* 420; 8 *ib.* 214.

The biddings will not be opened in this country except for *special cause*, and *not then* unless the purchaser *is fully indemnified for all damages, costs and expenses*, to which he has been subjected. 3 *Paige* 100, *Duncan vs. Dodd;* 13 *Wendell* 124, *Collier vs. Whipple;* 3 *Johns. Ch. Rep.* 425, *Lansing vs. McPherson;* 3 *Johns. Ch. R.* 290, *Williams vs. Dale;* 2 *Paige* 339, *Requa vs. Red;* 1 *Hoffman's Ch. Pr.* 146; 9 *Paige* 257, *Post vs. Lett;* 2 *McCord's Ch. R.* 159, *Frazier vs. Hall;* 2 *Harr. & Gill* 346, *Anderson vs. Foulke;* 5 *Yerger* 240, *Henderson vs. Lowry;* 4 *Munf.* 423, *Wood vs. Hudson.*

The applicant must pay the expenses and *state the advance offered.* 2 *Daniel's Ch. Pr.* 1471.

The appellants have not complied with a single requirement. They made no offer to pay damages or expenses; nor did they offer to deposit an advance. Inadequacy of price is all they have to rely on; and it is well settled, that *mere inadequacy* is not sufficient to authorize an order of re-sale. It must be certain that a resale will promote the interests of all the parties to the decree.

If the purchaser is a stranger, he must be saved harmless. If he is a party, as in this case, the amount decreed in his favor, his damages and expenses must be secured. This rule is recognized in many of the above cited cases.

A sale will not be set aside for mere inadequacy of price, where the party applying was in a situation to understand and protect his rights, but suffered the property to be sacrificed by his own negligence. 1 *Barbour's Ch. R.* 608; *Thompson vs. Mount,* 3 *Johns. R.* 556; *Livingston vs. Byrne,* 7 *Ves.* 30, 34; 10 *Ves., jr.* 68; *Newland on Cont.* 68.

In view of the whole case presented, we submit that:

*First,* The appellants did not present themselves before the chancellor in attitude to ask for a re-sale.

*Secondly,* The facts did not warrant a re-sale.

**658**    CASES IN THE SUPREME COURT

Penn's ad. et al. vs. Tolleson.    [October

Mr. Justice Compton delivered the opinion of the Court.

On bill filed and proceedings had in the Crittenden Chancery Court, to enforce a lien on certain lands lying in that county, for the payment of divers sums of money, the court ordered the lands to be sold by the master in chancery, for cash; and decreed that the proceeds of the sale, with those arising from the rents and profits, to be ascertained by the master—" will, after payment of the costs of this suit, be applied to pay Nancy E. Tolleson $8,603 66, with legal interest from this day until paid. Next, to pay the Planters Bank of Tennessee $2,811 65, with like interest from this day until paid: and the residue, if any, be delivered to the administrator of the estate of James L. Penn, deceased. And the master shall report what he shall do," etc.

On the coming in of the master's report, the Bank, Penn's administrator, and his infant heir at law, moved the court to set aside the sale, and order a re-sale, which was refused, the sale was confirmed, and they appealed.

The circumstances attending the sale, necessary to be stated, are briefly, the following: The master published his advertisements in the Memphis and Helena papers, giving notice of the sale in the usual form, and among other things, that the terms would be for cash.

The sale took place at Marion, the county seat of Crittenden county, distant twelve miles from the city of Memphis, and seems to have been numerously attended. At the sale, the appellee, who was the complainant in the proceedings in which the order of sale was made, directed and required of the master, that the terms of the sale, as to so much of the proceeds as would be necessary to discharge the amount decreed in her favor, should be payment down *in gold and silver at the close of the sale*, which was announced by the master, at the commencement of the offering. The bidders present manifested surprise, and expressed their inability to comply with the terms, which they declared to be new and unexpected, and against which they all remonstrated. Subsequently, the master, after having

a conversation, apart from them, with the appellee, announced that time would be given for the payment of the specie, until 5 minutes before three o'clock, when, if not paid, a re-sale would be made. He refused to vary the time so as to make the bids payable in specie at Memphis that evening, or at Marion as soon as it could be brought there, or at the residence of the master, on the next day; or to receive, at the close of the sale, a check on the Planters Bank of Tennessee, at Memphis, payable in specie, which was offered to be marked "good" by the Cashier of the bank, who was present at the sale. Among the the persons present, with the expectation of bidding, was a *Mr. Dunlap*, of Tennessee, who had come one hundred and fifty miles for that purpose, and would have bid at least $10,000 for the lands. He was prepared to bid, but did not have the specie there to pay down. His ability and integrity were vouched for by persons with whom the master was well acquainted. He proposed, that if he should become the purchaser, to pay the money that evening in Memphis, or to have it the next day at Marion, or at the residence of the master. He also proposed to give for the amount of his bid, his check on the Planters Bank of Memphis, payable at sight, in gold and silver, marked "good" by the Cashier, who said he would endorse it, and who was an officer of one of the leading Banks of Memphis, and personally well known to the master.

The master, however, adhered to the terms announced, and seems to have acted in strict obedience to the requirements of the appellee.

It was now eleven o'clock when the bidders held a consultation, with a view of determining whether the purchaser, after the sale, could go to Memphis, a distance of twelve miles, and return by the time fixed for counting down the specie to the master; to accomplish which, a distance of twenty miles had to be traveled, the Mississippi river crossed twice, the money counted at Memphis, and again at Marion. This they concluded the purchaser could not do, and so declined to bid at all.

The lands were then knocked off at $7,000 to the appellee,

who was the sole bidder, and who had caused to be carried to the place of sale, an amount in gold, which, together with the amount due her out of the proceeds of the sale, was sufficient to enable her to bid as high as $10,000 for the lands. She had also made an arrangement with a friend to let her have more gold on the spot, in the event she should need it.

According to the weight of testimony in the cause, the lands were worth from $12,000 to $14,000.

It is impossible to regard the appellee as a purchaser in good faith—she was a party to the proceedings—was one of the creditors, for the payment of whose claims the lands were sold. Hers was the largest and first to be paid. At the sale she was a bidder, prepared to comply with the terms, which at her instance, the master announced and refused to vary, and which operated as a surprise upon the bidders present, stifled all competition, and enabled her to buy the lands at about half their value.

Although a creditor is entitled *stricti juris*, to payment in specie, still, in ordinary business transactions, it is not usually required; and in this case, no previous notice having been given of such requirement, it was not at all improbable that the bidders would be found at Marion without the gold and silver, especially so, when it is borne in mind that the sale was made in the vicinity of the city of Memphis, where, if the bidders had provided themselves with the specie, it would most likely have been left, as a place of safe deposit.

But a reasonable time was not even allowed them to get it there from Memphis; and the master, whose affidavit was read on the hearing, does not pretend that he believed, or had reason to believe, that Dunlap's check, or that of any other person who might become the purchaser, would not be paid in specie, on presentation, or that the specie would not be paid that evening in Memphis, or at Marion as soon as it could be brought there, or at his residence the next day. In view of all the evidence adduced, he seems, in this respect, to have been controlled by the directions of the appellee, regardless of the interest

of the other parties concerned; and his conduct, if not attributable to collusion between him and the appellee, was, to say the least of it, the result of an unjustifiable interference on her part, with his *discretion*, which, as an officer of the court, he should have been left to exercise, free from the dictation or control of any of the parties interested.

.According to the terms and legal effect of the decree under which the master was acting, the appellee had no right to require that the purchase money should be paid down on the day of sale, within the time fixed at her instance, and even if it had been so paid, the master was not authorized to pay over any part of it to her until the further order of the court. The court itself was the vendor, and he the agent through whom it acted. The whole proceeding, from the begining to the final confirmation of the reported sale, and the passing of title to the vendee, and the money to the persons entitled to it, was under the supervision and control of the court.

The sale resulted in an injury to the appellants, and the conduct of the appellee superinducing this result, must be regarded, under all the circumstances, as a successful attempt to stifle competition, and purchase the lands at a sacrifice. Such conduct the law characterizes as fraudulent, and a court of equity will not hold such a sale valid. *Goldsmith vs. Osborne*, 1 *Edw. Ch. Rep.* 560; *Baring vs. Moore*, 5 *Paige Ch. Rep.* 48; *Neilson vs. McDonald*, 6 *John. Ch. R.* 201.

It is conceded in argument, that if the appellee was not a *bona fide* purchaser, it was not necessary, in order to set aside the sale, on the application of the parties injured, that an advance on her bid, or any sum whatever should have been offered and deposited in court; and so we understand the law to be.

In England it is the practice to open the biddings at any time before the sale is confirmed, almost as a matter of course— where it is made to appear that a larger sum can be obtained for the land, and where the applicant offers and deposits in court, an advance of ten per cent. on the former sale, besides

expenses. In such cases, the deposite is regarded as an indemnity to those interested, against loss, and as a guaranty for an advanced price; and in that view, is equitable.

But the practice of setting aside sales, merely for the sake of an advance upon the price, which, by a series of adjudications, has grown into a system in England, has not been adopted in this *country*. 2 *Dan. Ch. Pr.* 1465, 1467, *and authorities there cited in English and American notes.* Nor does the reason of the rule requiring a deposit in court, under the English practice, as above indicated, apply to the case before us. The appellee, as has been seen, was a purchaser in bad faith, and could not, therefore, ask for indemnity against any loss she might sustain, in consequence of a re-sale; and the other parties interested desired no deposit, but insisted that the sale should be set aside, because they were injured by it. *Forman & Dane vs. Hunt et al.*, 3 *Dana* 614; *Williamson vs. Dale et al.*, 3 *Johns. Ch. Rep.* 292.

The decree of the Court below must be reversed, and the cause remanded with instructions to set aside the sale, and order a re-sale.

Absent, Mr. Justice RECTOR.