## HOPPES VS. CHEEK ET AL.

As a general rule, where a purchaser of land has been let into possession, and continues without interruption, under a paramount title, he is not, in the absence of fraud, entitled to equitable relief from payment of the purchase money upon the ground of defect of title—his remedy being at law, on the covenants in his deed, and if there be no covenants which cover the defect, he is without remedy at law or in equity.

To constitute a breach of the covenant for quiet enjoyment, there must be a union of acts of disturbance and lawful title—a possession by a mere intruder, without color of title, through mistake as to the boundary, constitutes no breach of such covenant.

A sale by a trustee, under the following circumstances, held to be fraudulent and void: upon the day of sale, few persons were present; the debtor applied to the trustee to delay the sale as long as possible, stating that he expected to obtain an injunction to restrain the sale: the trustee promised that he would not sell until 1 o'clock, and the debtor left the place; the creditor urged the trustee to sell, and in consequence of his importunity, the trustee sold the land between 11 and 12 o'clock, and the creditor being the only bidder, purchased it at one-fifth of its value.

*Appeal from Crittenden Circuit Court in Chancery.*

Hon. GEORGE W. BEAZLEY, Circuit Judge.

FOWLER & STILLWELL, for appellant.

The testimony utterly failed to make out fraud upon the part of appellant or Lyles, but on the other hand fraud and oppression on the part of the appellees were proved. That the money was unpaid on the day of sale, that the required notice was given and the sale made on the proper day, between the hours, and at the place designated by the deed of trust, was not controverted.

The alleged promise of *Lyles* to postpone the sale, amounted

37

to nothing. It was not pretended that appellees desired delay to enable them to pay the money; but the request to wait to see whether *E. Cheek* would arrive, and if he did, whether he had succeeded in *procuring an injunction*. It was not pretended even that they intended to pay the money if he failed to get there, or came without the injunction.

Appellees were not entitled to any sort of relief. They had bought land and been let into possession. If they would be relieved from their purchase, they should restore what they received and rescind the contract. 1 *Freeman's Ch.* 1, 115, *Williamson vs. Raney;* 2 *J. J. Marshall* 367, *Markham vs. Todd;* 12 *How. U. S. R.* 38, *Threadgill vs. Pintard;* 1 *Nott & McCord's R.* 373, *Wilson vs. Wetherly;* 7 *Wheat.* 53, *Willison vs. Watkins;* 3 *Marsh.* 287.

Without fraud or actual eviction, a court of equity will never relieve a purchaser from the payment of the purchase money. He must seek his remedy at law on the covenants in his deed. 2 *Johns. Ch. R.* 519, *Abbott vs. Allen;* 1 *Johns. Ch. R.* 217, *Bumpas vs. Platner;* 4 *Hen. & Munf. R.* 390, *Yancey vs. Lewis;* 2 *Munf.* 295, *Gourland vs. Wright.*

GARLAND and ALEXANDER, for appellees.

Mr. Justice COMPTON delivered the opinion of the Court.

On the 17th June, 1851, Jacob Hoppes, as the guardian of John F. Hoppes, sold to Elijah Cheek, under an order of the Probate Court, a tract of land—the property of his ward—lying on the Mississippi river, in the county of Crittenden, for two thousand dollars, of which sum twelve hundred and fifty dollars were paid down in cash. The contract of sale was reduced to writing, and, according to its terms, Hoppes, after having the land surveyed, was to convey it to Cheek, on 1st December, 1851, by deed in fee simple, with covenants of general warranty, and deliver possession free from incumbrance, when Cheek was to pay him the further sum of $750, being residue of the purchase money.

By an arrangement, however, between the parties, entered into for the accommodation of Cheek, Hoppes executed the deed to Elijah and George W. Cheek, on the 7th August, 1851,—the said Elijah having in the meantime sold an 'interest in the land to the said George W.—and delivered to them possession of the premises, when the Cheeks executed their promissory note to Hoppes for balance of the purchase money, payable 1st December, 1851, to secure the payment of which, they, at the same time, conveyed the land to O. P. Lyles in trust, with power to sell if payment was not made at maturity.

On the 14th October, 1851, the Cheeks applied to Hoppes, and expressed themselves dissatisfied with the deed he had executed, insisting that it was not such a deed as, by the contract of sale, they were entitled to. Whereupon, Hoppes made them another deed with covenants of general warranty, seizin, quiet enjoyment and against incumbrances, which they accepted as sufficient.

When the note of $750 fell due, the Cheeks refused to pay it, giving as a reason for such refusal, that one McKnight was then, and had been from a period anterior to their purchase from Hoppes, in the adverse possession of a part of the land, and that one Winchester had instituted and was prosecuting against them a suit for recovery of two-thirds of the land, upon an alleged paramount title; again insisting that the covenants in their deed were not sufficient for their protection. They offered to pay the note, however, if Hoppes would enter into an obligation with security to remove McKnight from that portion of the land he occupied, and indemnify them against any loss that might accrue by reason of Winchester's suit; which Hoppes refused to do, and directed Lyles to sell the land.

The land was advertised and offered at public sale pursuant to the provisions contained in the deed of trust, and was knocked off to Hoppes at $600, to whom Lyles, as trustee, made a deed in due form of law.

The bill in this case was then brought by Elijah and George

W. Cheek, against Jacob Hoppes and others, and the relief sought was, that a sufficient deed should be executed to the Cheeks; that the purchase by Hoppes at the trustee's sale should be declared fraudulent and void, and his deed canceled; that the payment of the purchase money should be stayed; and that Hoppes should be required to extinquish outstanding titles and incumbrances; or if that should be impracticable, and Winchester should succeed in his suit, that Hoppes pay the value of such part of the land as Winchester might recover, valuing the whole at two thousand dollars, etc.

The cause was heard at May term, 1857, of the Crittenden Circuit Court, and a decree rendered, staying the payment of the unpaid purchase money until the further order of the court, canceling the trustee's deed to Hoppes, and requiring John T. Hoppes, who had then obtained his majority, to execute to the Cheeks a deed to the land—describing it according to a plat and survey of the same set out in the decree, with covenants of general warranty, etc.

From this decree, the defendant Jacob Hoppes alone appealed, and so much only of the decree as affects him, is before this Court.

Our enquiry, then, is whether, upon the pleadings and proof in the cause, the court below erred in decreeing that payment of the purchase money be stayed, and the deed of Lyles as trustee to Hoppes, canceled.

1. The deed from Hoppes to the Cheeks, bearing date 14th October, 1851, and under which they went into possession, contained all the covenants which Hoppes, under the contract of sale, had engaged to make, and was treated by the parties as a complete execution of the contract. It was not charged in the bill, nor shown in evidence, that Hoppes acted fraudulently in the sale and conveyance of the land; and it is well established by the authorities that, as a general rule, where a purchaser has been let into possession, and continues without interruption, under a paramount title, he is not, in the absence of fraud, entitled to equitable relief from payment of the pur-

chase money, upon the ground of defect of title. In such a case, he must seek his remedy at law, on the covenants in his deed, and if there are no covenants which cover the defect, then he is without remedy, either at law or in equity. *Bumpass vs. Platner*, 1 *Johns. Ch.* 213, 218; *Abbot vs. Allen*, 2 *Ib.* 519; *Simpson vs. Hawkins*, 1 *Dana* 305; *Patton et al. vs. Taylor*, 7 *How. U. S.* 132.

There are cases, however, in which it seems to have been held that the assertion and prosecution of an adverse title, coupled with the insolvency or non residence of the party bound by the covenants, are sufficient to bring the case within the *quia timet* jurisdiction which, in extraordinary cases, courts of equity have exercised. *Rawle on Cov.* 685; *Stockton vs. Clark*, 3 *Mun.* 68; *Jones vs. Waggoner*, 7 *J. J. Mar.* 144; *Ingram vs. Morgan*, 4 *Hump.* 66; *Clark vs. Cleghoon*, 6 *Geo.* 225; and in *Vance vs. House's heirs*, 6 *B. Monroe* 540, it is said, " A bill for " the dissolution of the contract cannot be sustained, and the " payment of the consideration enjoined, except in the case of " fraud, insolvency or non-residency of the vendor, and a pal- " pable and threatening danger of immediate or ultimate loss, " without legal remedy, by reason of the defects in the title " conveyed, and the inability of the vendee to protect himself " against eviction under it; and to sustain such a bill, after the " vendee has accepted the conveyance, the *onus* lies on him to " establish, to the satisfaction of the Chancellor, that the defect " of title and imminent danger of eviction exist." But the case before us does not come within the rule laid down in these cases. Although it is shown in evidence that Jacob Hoppes was insolvent, and unable to respond in damages on the cove- nants in his deed, still, there is no allegation to that effect in the bill, and without such allegation, according to the well set- tled and familiar rules of pleading and practice in courts of equity, the evidence establishing the fact of insolvency cannot be regarded. Furthermore, the alleged title of Winchester does not appear in the record. The answer admits the insti- tution of a suit by Winchester for a part of the land, but denies

that he had title, and at the hearing no evidence, whatever, bearing upon this point, seems to have been adduced. Nor does the bill charge that McKnight ever asserted title to any part of the land, or was ever in the adverse possession of any part of it; consequently no issue was made by the pleadings as to that, but if it had been otherwise, the result would be the same, for the evidence abundantly shows that he was a mere intruder, in the occupancy of about one acre of the land, without even a color of title, arising from an extension, through mistake, of his improvement beyond the boundary line of an adjoining tract of forty acres, which he had rented from Winchester. Such a possession constitutes no breach of the covenant of quiet enjoyment.

To constitute a breach of that covenant, there must be a union of acts of disturbance and lawful title. The Cheeks should have exerted themselves, in some way, to enjoy their possession, or have shown, affirmatively, that McKnight had a paramount title, so that any exertion on their part would have been unavailing. *Beebe vs. Swartwout*, 3 *Gillman* 162; 12 *Vermont* 85.

We think, therefore, there was no ground for withholding the purchase money, and that the decree of the court, in this respect, was erroneous.

The sale under the deed of trust was made on the 23d December, 1851. The weather was quite cold, and but few persons were in attendance. One witness testifies that there were not more than four or five, and another that there were as many as eight or ten. Jacob Hoppes, the creditor, was the only person who bid for the land, and it was knocked off to him at $600, when the weight of evidence shows it to have been worth, at that time, $3,000. George W. Cheek, one of the grantors in the deed of trust, was present at an early hour in the morning, and requested the trustee to postpone the offering to as late an hour as he lawfully could, stating that a writ of injunction had been applied for, and would be served on him to prevent the sale, if it should reach there in time. The

Trustee promised Cheek that he would not sell until one o'clock, and Cheek left. Hoppes being present, urged the Trustee to sell at the earliest hour possible. The land was sold at between 11 and 12 o'clock, and Cheek returned with the injunction before one o'clock. The Trustee testifies that he would not have sold at so early an hour, but for the importunity of Hoppes.

Whether Cheek, though contesting his liability to pay the debt for which the land was sold, would have remained and paid the money rather than have suffered his property to be sacrificed, we cannot know; but that he might have so acted, but for the promise of the Trustee that he would not sell until one o'clock, is certain. And whatever may have been the motive which actuated Hoppes in urging the sale, whether to avoid competition, and purchase the land for less than its value, or to avoid the effect of the expected injunction, his conduct was unfair and oppressive—was well calculated to influence, and did influence, the Trustee to act improperly, and to the prejudice of the appellees.

Viewing all the circumstances attending the sale, in connection with the inadequacy of price, we do not hesitate to hold that the sale was fraudulent and void. *Penn's adm'r vs. Tolleson*, 20 *Ark.* 652.

So much of the decree as stays the payment of the purchase money, must be reversed. In all other respects, the decree must be affirmed, and the cause remanded for further proceedings.