SESSIONS VS. PEAY, RECEIVER.

The theory of sales by masters in chancery is, that the court is itself the vendor, and the commissioner or master is mere agent in executing its will.

The whole proceeding, from its incipient stage up to the final ratification of the reported sale, and the passing of the title to the vendee, and the money to the person entitled to it, is under the supervision and control of the court.

The court will confirm or reject the reported sale, or suspend its completion, as the law and justice of the case may require.

If not restricted by statute, it is within the power of the chancellor to prescribe, by the decree, the time, place, terms, and mode of sale.

The proper construction of sec. 16, Art. II, chap. 28, Gould's Digest, is, that when lands are to be sold under execution, issued upon a decree of Pulaski Chancery Court, the sale must be made at the court-house of the county in which the lands are situated, as under executions upon judgments at law; but the statute does not expressly, or by necessary implication, deprive the court of the discretionary power to prescribe the time, place and terms of sales made by the master, or a commissioner, under its decrees.

As a general rule, however, unless good cause be shown to induce the court to direct otherwise, it should order the sale to be made on the premises, or at the court-house of the county in which the lands are situated.

Where lands situated in Chicot, were directed by the Chancellor to be sold at the court-house in Pulaski county, this court must presume, in the absence of any showing to the contrary, that the Chancellor so directed for some good and sufficient cause, and will not reverse the order.

In such case, the designation of the newspaper in which the notice of the sale is to be published, is left to the discretion of the Chancellor.

*Appeal from Pulaski Chancery Court.*

Hon. HULBERT F. FAIRCHILD, Chancellor.

Argued before Mr. Chief Justice ENGLISH, Mr. Justice COMPTON, and Hon. THOMAS JOHNSON, Special Judge—Mr. Justice FAIRCHILD not sitting.

STILLWELL & WOODRUFF, for appellant.

The error to which we ask attention, and confidently rely on to reverse the decree, is, that the sale was directed to be made, *not* at the court-house door of the county of Chicot, *where the land is situate,* but at the court-house door of Pulaski county. This was wholly unwarranted by law. See *sec.* 56, *chap.* 68, *Gould's Dig., page* 509, *title Execution ; sec.* 15, *chap.* 117, *p.* 801, *title Mortgages.*

These are the only sections of law of which we have any knowledge, relative to judicial sales, at least as far as relates to the time and place, and any departure from the directions of the statute, is not only in violation of law, but tends to manifest injury and oppression of the defendant, whose property is decreed to be sold, and could benefit no one but some speculator who is willing to sacrifice him for his own pecuniary gain.

Not only the place, but the manner of advertising the sale was disregarded. The sale is to take place 150 miles from the court-house of Chicot county, and the notice is to be given by publication in a newspaper at Little Rock. No advertisement at all is to be made in Chicot. The people who are best acquainted with the land and most likely to desire to purchase are to have no notice.

The appellant also contended that he had a right to discharge the mortgage debt in State bonds.

HEMPSTEAD, for appellee.

It is true that judicial sales under process of execution, must be made at the court-house door, when land or slaves are levied on. In this case, although the lands are situate in Chicot county ; yet the exclusive jurisdiction to foreclose the mortgage was given by law to the Pulaski Chancery Court; and if that court could pronounce a decree of foreclosure, it was competent to order the sale to take place in Pulaski county, and it was proper that the sale should take place there. *Gould's Dig., sec.* 13, *p.* 241; *sec.* 16, *p.* 242.

Outside of any statutory provision, I take it to be clear, that, in ordering a sale of mortgaged property, a court of chancery is not restricted to the county where the property is situated; but for sufficient reasons could direct the sale elsewhere. 'It may be true that ordinarily the sale might be directed where the property was situated; but this is not absolutely obligatory; and the court has the right to order it to take place at such time, place, and on such notice as it may see fit. This is the usual course in sales ordered by a court of chancery.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

This was a bill to foreclose a mortgage executed by Sessions to the Receiver of the assets of the Real Estate Bank.

The questions growing out of the attempt of Sessions to discharge the debt secured by the mortgage, in the bonds, etc., of the State, were decided in the case of *Sessions et al. vs. Peay, Rec'r.* 21 *Ark.* 100.

The lands embraced in the mortgage are in Chicot county. The chancellor decreed that if the debt should not be paid by a day named in the decree, the lands should be sold for its satisfaction, at the court-house of Pulaski county, by a commissioner appointed for that purpose.

It is insisted for Sessions, who appealed from the decree, that the chancellor erred in directing the lands to be sold at the court-house in Pulaski.

The theory of sales of this character is, that the court is itself the vendor, and the commissioner or master is mere agent in executing its will. The whole proceeding, from its incipient stage up to the final ratification of the reported sale, and the passing of the title to the vendee, and the money to the person entitled to it, is under the supervision and control of the court. The court will confirm or reject the reported sale, or suspend its completion, as the law and justice of the case may require. *Tooley vs. Kane et al.*, 1 *S. & M. Ch. R.* 522; *Penn's ad. et al. vs. Tolleson*, 20 *Ark.* 652; *Deadrick et al. vs. Smith*, 6 *Hump.* 146.

If not restricted by statute, it is within the power of the chancellor to prescribe, by the decree, the time, place, terms and mode of sale; and the varying circumstances of cases render it necessary that he should be invested with discretion in these matters, in order to prevent the sacrifice of property, and to promote advantageous sales.

Mr. Daniell says: "In strictness, all sales ought to take place in the public room at the master's office in London, and should be effected by the master's clerk; and formerly when it was considered for the benefit of the parties interested that the estate should be sold in the *country*, or by any other person than the master's clerk, it was necessary to have a special order of court to warrant such a deviation from the ordinary practice; but the necessity for such an order has been taken away by the 75th of the Orders of 1828, which directs, 'That where estates, or other property, are directed to be sold before the master, the master shall be at liberty, if he shall think it for the benefit of the parties interested, to order the same to be sold in the *country*, at such *place*, and by such person as he shall think fit.'" 2 *Dan. Ch. Pl. & Pr.* 1,447.

Mr. Hoffman says: "In England, the sale takes place at the master's chambers, or, if in the country, before the master's clerk, deputed for that purpose. Our decrees (unless on consent or special cause ordered otherwise) direct that the lands be sold at public auction, in the county in which they are situated, or in the city of New York or Albany, if they lie there. Where the sale is to be in the country, the master may exercise his discretion, where to sell, but it is usual to do it at the county town. It is sometimes directed in the decree." *Hoff. Master in Chan.* 216.

*Sec.* 7, *Art. II, chapter* 28, *Gould's Dig.*, declares that the separate court of chancery, established by the act at the seat of government, "shall proceed according to the rules, usages, and practice of courts of chancery, except when otherwise provided by law, and enforce its orders and decrees by execu-

tion, or in any other manner proper for a court of chancery," etc.

*Sec.* 16, *ib.*, declares that "the laws now in force in regard to execution sales shall apply to sales upon process, of said chancery court, which sales, when of property in Pulaski county, may be made on the first days of the terms of said court, and such process shall be returnable upon the second days of the terms of the court."

We think the proper construction of this section of the statute is, that when lands are to be sold under execution issued upon a decree of the court, the sale must be made at the court-house of the county in which the lands are situated, as under executions upon judgments at law, but that the statute does not expressly, or by necessary implication, deprive the court of discretionary power to prescribe the time, place and terms of sales made by the master, or a commissioner, under its decrees.

But we think, as a general rule, unless good cause be shown to induce the court to direct otherwise, it should order the sale to be made on the premises, or at the court-house of the county in which the lands are situated.

We must presume, in the absence of any showing in the record to the contrary, that the chancellor directed the lands to be sold, by the commissioner, at the court-house of Pulaski, for some good and sufficient cause, and shall not, therefore, overrule his discretion and direct otherwise.

If the appellant had made it appear, to the chancellor, that the lands would be sacrificed by a sale in Pulaski, or that a more advantageous sale could be made in the county where the lands were situated, we must presume that he would have ordered the sale to be made in the latter county. As above remarked, the sale is under the control of the court up to the time of its completion.

The decree must be affirmed, but the time fixed for the sale having passed, the cause must be remanded, so that the decree

may be executed under further directions, to the commissioner, by the chancellor.

The chancellor directed the commissioner to advertise the sale in a newspaper published in Little Rock; and it is insisted for the appellant that the sale should also have been advertised in Chicot county, in order that persons residing in the vicinity of the lands, who, it is contended, would be most likely to bid for them, might be informed of the time and place of sale.

The force of this objection would depend upon the extent of the circulation of the Little Rock newspapers, in Chicot county; and we think the matter may be safely left to the information and discretion of the chancellor.