WILLIAMSON *against* DALE and others.

*January 9.* The practice of the *English* Chancery of opening biddings at the master's sales, has not been adopted here.

But where the executors of a mortgagee were innocently misled, and induced to believe, that the sale of the mortgaged premises would not take place on the day appointed, there being no culpable negligence on their part, the court, under the circumstances of the case, ordered the sale to be set aside, on the ground of surprise, on the defendant's paying to the purchaser all his costs and expenses, and the costs of the application, though the sale was perfectly regular and fair, and no unfair intention was imputed to the mortgagee or his solicitor.

PETITION of the defendants, the executors and infant heirs of *Robert Fulton*, deceased, to set aside the sale of mortgaged premises, on the ground of surprise; and that they be allowed to redeem the premises, on paying the debt and costs within a reasonble time, or that the biddings may be opened, &c.

The material facts set forth in the petition, and the affidavits read in support of it, are stated in the opinion of the court.

The mortgaged premises were bid off at 2,700 dollars, subject to a prior mortgage for the same amount; and the petitioners stated the value of the property to be more than 12,000 dollars.

The purchaser, at the master's sale, opposed the application, insisting on his purchase.

*J. V. Henry,* for the petitioners.

*Cowdry,* for the purchaser.

THE CHANCELLOR. The sale in this case ought to be set aside on the ground of surprise. Here is as yet no report of the sale by the Master, and no deed executed

The executors of *Robert Fulton*, deceased, were induced to believe that the sale would not have been made on the 4th of last *December*. This belief was founded on the representations made to them, by their agent, of conversations which he had held with the plaintiff and his solicitor. Those conversations and representations are verified by the affidavits of the executors and of the agent, and they are not contradicted. The plaintiff and his solicitor are silent.

It appears that when the last payment of 300 dollars was made to the plaintiff, in *October* last, he expressed a reluctance to receive it, as he was not then in want of money, and he told *Hoffman*, who acted as agent for the executors, "that he would show every reasonable indulgence for the payment of what remained still due." The agent understood from this assurance, that the plaintiff would not compel a sale of the property, but would wait a reasonable time. It further appears, that the agent afterwards called upon the plaintiff's solicitor, and "stated to him the promise made by the plaintiff, of not pressing the estate, and the plaintiff's declaration to him, that he did not want money at that time; that the solicitor replied, that, at all events, the advertisement for the sale of the property must be continued, which would put the estate to considerable expense, and which, the agent said, the estate would pay." The agent states further, that the solicitor said, he would represent the conversation to the plaintiff, and "that he had no doubt the plaintiff would be satisfied therewith, and consent that the property should not be sold, and that he would advise the plaintiff to wait, and not have the property sold." These different conversations were reported to the executors, and they were induced to believe that the property would not be sold; and by that means, they were surprised by the sale, and were not prepared to meet it, as they otherwise would have done. Notice of the sale was, indeed, left at the

1818.

WILLIAMSON
v.
DALE.

agent's office the day before, or on the day of the sale, but he was out of town, and did not receive it in time.

There is no imputation of any unfair intention in the plaintiff or the solicitor, or of any unfair conduct at the sale; but, I think, that under the circumstances, the defendants were innocently misled, without any culpable negligence imputable to them. The sale ought, therefore, to be opened upon terms.

I wish it to be distinctly understood, that I interfere in this case on the ground of surprise, and that I do not lay any stress upon the alleged inadequacy of the auction price. Such a ground alone, unattended with other circumstances, is not sufficient. (*Livingston* v. *Byrne*, 11 *Johns. Rep.* 566.) I may add further, that the surprise here is not of the most striking kind, and the case for relief, on that ground, is pushed to the utmost verge of an admissible interference.

The practice of opening biddings at the Master's sales, which prevails in *England*, has not prevailed here, and I do not proceed in this case upon the ground of that practice. If it ought to be adopted, this case is not brought within it, for here is no offer of any specified advance price. The court, under that practice, require the deposit of a reasonable advance on the bid, together with the purchaser's expenses. (1 *Vesey*, jun. 453. 4 *Vesey*, 700. 6 *Vesey*, 466. 513. 7 *Vesey*, 420. 8 *Vesey*, 214. 14 *Vesey*, 151. 1 *Vesey & B.* 361. 3 *Vesey & B.* 144.) From what fell from Lord *Eldon*, in *White* v. *Wilson*, (14 *Vesey*, 151.) it is questionable, whether the practice of opening biddings as freely as they do in *England*, be not productive of more injury than good. He says, that "half the estates that are sold in the court are thrown away upon the speculation, that there will be an opportunity of purchasing, afterwards, by opening biddings." But here is a surprise, which Lord *Eldon* admits to be sufficient to open biddings, even after confirmation of the Master's report.

It is a surprise, " generated by the party's own conduct." It was the language of the plaintiff and his solicitor which unintentionally put the defendants off their guard, and led to a sale without their expectation or knowledge, and contrary to their intention.

The purchaser, who stands fair before the court, is entitled to be paid his costs and expenses, to be allowed by a Master, on the liberal principle of the allowances of costs between solicitor and client.

I shall, accordingly, direct, that the sale be set aside on the defendants' paying, upon demand, the purchaser's costs and expenses, including the costs of this application; and that the plaintiff be at liberty to cause the mortgaged premises to be again exposed to sale, on giving the usual three weeks' notice in one of the daily papers in the city of *New-York*, of the time and place of sale.

The following order was entered, " Ordered, that the sale be set aside, on condition that the defendants pay to *Elbert Anderson*, the purchaser, upon demand, his costs and expenses attending the purchase, and including his costs of this application, to be taxed upon the principle of the allowance of costs and expenses as between solicitor and client. And it is further ordered, that if the said condition be complied with, the plaintiff be at liberty to cause the mortgaged premises to be again exposed to sale by a Master, on giving the usual three weeks' notice in one of the daily papers in the city of *New-York*, of the time and place of sale ; and that the costs and expenses of the former notice and sale on the part of the plaintiff, be included in the expenses of the suit, and be chargeable, with the other costs of suit, upon the mortgaged premises ; and that a copy of this order be forthwith served on the solicitor for the plaintiff, and also on the purchaser, or his counsel."