## McGown *vs.* Sandford and others.

The sheriff, or the master, who is directed to sell property under a judgment, or a decree, to pay the debt due to the plaintiff, should expose it for sale at such a time, and under such circumstances, as to cause it to bring the best price, without injury to the party entitled to the proceeds of the sale by delaying the payment of his debt.

Where a master in chancery, in violation of his duty, is proceeding to sell property under a decree at an improper time, and when such sale will necessarily produce a sacrifice of the property, as during the raging of a pestilence, or when there is a threatened invasion, which would deter bidders from attending the sale to bid upon the property, the court under whose decree the sale is to be made may stay the sale. But the court has no legal right to interfere, for the relief of a particular individual, by arbitrarily suspending the ordinary operation of the laws for the collection of debts, to meet his particular case.

The fact that the value of property was depressed in consequence of the general derangement of the finances, and affidavits of the defendants and others of their belief that the politics and finances of the country would be settled by the congress which was then in session, so as to greatly increase the value of property, were held to be insufficient to justify the court in ordering a suspension of the sale of mortgaged premises, under a decree of foreclosure.

August 23.    THIS was an appeal by the complainant from an order of the vice chancellor of the first circuit postponing the sale of mortgaged premises, under a decree of foreclosure, from the 24th of June, 1841, to the first of January, 1842. The bill was filed to foreclose a mortgage for $26,000, given by the defendant Hall to E. Sandford, payable in July, 1838, and assigned by the latter to the complainant. The proceedings to foreclose were commenced in October, 1839; but some of the defendants who had guaranteed the payment of the debt, having put in answers which required the taking of testimony, the complainant was unable to bring the cause to hearing until January, 1841; when a decree of foreclosure was directed by the assistant vice chancellor, before whom the cause was heard and decided. And at the request of the mortgagor, who represented that the month of February would not be a favorable time to sell, owing to the unsettled state of the politics and finan-

ces of the country, the complainant's solicitor consented that the property should not be advertised for sale until about the middle of June. A few days previous to the time appointed for the sale, Hall, the mortgagor, presented a petition to the vice chancellor before whom the bill was filed, stating, among other things, that the summer season was an unfavorable time to sell real estate, and that to force a sale of the mortgaged premises in this case *during the present unsettled state of the politics and finances of the country*, would not only wantonly sacrifice the property, but would materially injure if not ruin the parties interested in a favorable sale. He therefore prayed that the master might be directed to postpone the sale for eight months. And the vice chancellor, upon hearing the parties, made the order appealed from by the complainant.

1841.

McGown
v.
Sandford.

*C. W. Van Voorhis,* for the appellant.

*H. F. Clark,* for the respondent C. H. Hall.

THE CHANCELLOR. It is the duty of the officer entrusted with the sale of property, under a judgment or decree for the payment of a debt, to put it up for sale at such a time and under such circumstances as to make it bring the best price ; without injuring the party entitled to the proceeds of the sale by delaying the payment of his debt. And where a master, in violation of his duty, is proceeding to sell property under a decree in chancery at an improper time, when such sale must necessarily sacrifice the property, as during the raging of a pestilence, or while there is a threatened invasion, which will destroy all chance of fair competition by deterring bidders from attending the sale, it will unquestionably be the duty as well as the right of this court to interfere. But the court of chancery has no legal right to interfere for the relief of an individual by arbitrarily suspending the ordinary operation of the laws for the collection of debts to meet his particular case. And in the case under consideration, I see nothing to au-

1841.

McGown
v.
Sandford.

thorize this court to deprive the complainant of her money for six or eight months longer, which would not make it equally the duty of the court to prohibit the collection of any other debt, for the same length of time, where the complainant can only obtain his money by a sale of real estate under a decree of this court. This lady has already been kept out of her money for more than two years, since she was entitled to the same by the agreement of the defendant. And for aught that appears here, she may be ruined by having her own property sacrificed by a forced sale upon execution, if she is deprived of the amount due to her for six months longer, in the vain expectation that an extra session of congress will settle the politics and finances of the country so effectually as to greatly increase the value of the property of this mortgagor.

In the case of *Astor* v. *Romayne and others*, (1 *John. Ch. Rep.* 310,) one of my learned predecessors decided that the actual existence of a war, where there was no immediate danger of an invasion of the place where property was advertised to be sold, formed no sufficient ground for suspending the sale of mortgaged premises under a decree. And no one who recollects that gloomy period in our national history, September and October, 1814, can suppose that the finances or even the politics of the country are more unsettled at this time than they were then. The suggestion in the petition that the month of June was an improper time to sell real estate of this description, in the city of New-York, is fully rebutted by the affidavits which were read in opposition to the application. It is also contradicted by the fact, sworn to by the complainant's solicitor, that the respondent himself fixed upon the middle of June as a more favorable time for the sale of the property than the month of February. It appears, from the amount reported due, that even the interest on the appellant's mortgage has not been paid for the last two years; and yet the order appealed from suspends the power of the complainant to collect either principal or interest for more than six months longer, without even requiring the appli-

cant to pay sufficient interest to furnish the complainant with the means of living in the meantime. I cannot resist the conclusion, therefore, that the order appealed from not only violates a sound principle of equity as well as of law, that the creditor is entitled to his money when it becomes due and payable according to the terms of the contract of the debtor, but that great injustice and injury will probably result to the appellant if this order is permitted to stand. The order of the vice chancellor must therefore be reversed with costs; and the master must proceed to sell the property on the usual notice of three weeks. As the costs of opposing the motion before the vice chancellor and the costs of advertising and preparing for the former sale have already been paid, there is no necessity of providing for those costs here, except to direct that the appellant be entitled to retain those costs notwithstanding the reversal of the order appealed from.