MOUND CITY MUTUAL LIFE INSURANCE COMPANY *v.* M. HAMILTON and others.

## October Term, 1876.

MASTER'S SALE — OPENING BIDDINGS AFTER CONFIRMATION. — After the confirmation of a master's sale of land, it is not of course to open the biddings during the term, on the offer of a higher price alone; but they will be opened upon the offer by the owner, whose land has been sold in foreclosure of a mortgage and bought by the mortgagee, of an advance of over 300 per cent, and a reasonable excuse for failing to attend the sale.

SAME. — Under the usual practice of the courts in this state, their orders and decrees being completely in the judge's control, the ends of justice require that applications to advance the biddings, made at any reasonable time during the term, should be considered as made before confirmation; and this should be so, even under a stricter practice, if a sufficient excuse be given for the delay in making the application until after confirmation.

SAME. — To entitle an offer to open the biddings to any attention, it must be accompanied with the money and securities required by the original decree of sale.

*R. McP. Smith*, for complainant.
*T. M. Steger*, for defendants.

THE CHANCELLOR : — Under the bill in this cause, filed to foreclose a trust-deed on land to secure a debt due from Hamilton and wife to complainant, a decree was rendered at a former term of this court, ascertaining the complainant's debt, and directing the land conveyed in the trust-deed to be sold in satisfaction thereof. The master, after advertising the time and place of sale in the Nashville *Banner*, put up the property at public sale on September 16, 1876, and the same was struck off to the complainant at $150.

The sale was reported by the master, and on October 4, 1876, when the case was regularly called on the docket, the report was confirmed, and execution awarded against the defendant Hamilton for the unpaid balance of complainant's debt.

The defendant Hamilton now applies, the court being still in session, to set aside this confirmation and open the biddings. The application is supported by the affidavit of Hamilton that the property thus bid off at $150, consisting of sixteen acres and sixty-five poles, near Nashville, cost him, with improvements, nearly $2,500, and has rented most of the time for $150 a year, and $100 is offered for the rent of it for next year, and it is listed for taxes at $1,650. The affiant states that he carefully examined the columns of the *American*, the leading newspaper at Nashville, for the purpose of ascertaining when the property would be sold; that, not finding any advertisement, he concluded that the complainant had determined to hold up the sale of the property until a similar case against affiant and wife, instituted about the same time, and now in the Supreme Court by appeal, should be decided. Affiant also supposed that no sale of the land could be made and confirmed without the knowledge of his counsel. But so it was; affiant had no notice of the sale until it had been confirmed, and no opportunity of seeing that the property brought something like its value. The application is accompanied by the offer of a responsible party to open the biddings at the price of $500, and this party has executed notes, in conformity with the terms of sale and the practice of the court, for the advanced bid.

I had occasion, shortly after I took my seat on this bench, to consider the question of opening the biddings made at a master's sale, and came to the conclusion that the biddings might be opened upon the offer of a higher price, if the advance were so considerable as to furnish a sufficient inducement, under all the circumstances. *Atkison* v. *Murfree*, 1 Tenn. Ch. 51. To entitle such an offer to

attention, it is indispensable that it be accompanied with the money or securities required by the order of sale. No abstract offer to advance, or to procure a purchaser, can be entertained; for, by grasping at the shadow the reality might be lost, — a result which actually occurred in this court more than once, before the present practice was established. The Supreme Court had previously, in a case since reported, settled the practice of opening the biddings upon an advance of ten per cent. *Click* v. *Burris*, 6 Heisk. 539; and see *Glenn* v. *Glenn*, 7 Heisk. 367.

The offer now under consideration is far larger than the percentage mentioned, and is so great — being three and a third times more than the original bid — as to demonstrate that the application is not for delay, but in downright earnest. *Watson* v. *Birch*, 2 Ves. jr. 55. There is, however, this difference in the *status* of the cases above cited and of this case: in those cases the application was made before actual confirmation of the sale, whereas in this case the application is subsequent to the confirmation, but at the same term. The question to be considered is, Does this fact have any, and what, effect upon the rights of the applicant?

The weight of authority in this state, as in the English and American courts generally, undoubtedly is, that after confirmation it is not of course to open the biddings on the offer of a higher price alone. There must be some circumstances of fraud, mistake, or accident, or some trust relation between the parties, to justify the court in setting aside a contract completed by its own act in confirming the sale. *Coffin* v. *Corruth*, 1 Coldw. 194; *Houston* v. *Aycock*, 5 Sneed, 406; *Henderson* v. *Lowry*, 5 Yerg. 240; *Scott* v. *Nesbit*, 3 Bro. C. C. 475; *Morice* v. *Bishop of Durham*, 11 Ves. 57. The reason is, that by the act of confirmation the contract becomes complete, the purchaser from that date becoming entitled to all the fruits of ownership and subject to all of its risks. *Armstrong* v. *McClure*, 4 Heisk. 83. He is in

the position of a purchaser by private contract, and ought, apparently, to have similar rights.

Conceding this to be the law, there are, nevertheless, cases in which a contract of sale *inter partes* will be set aside, and no reason occurs why the same grounds would not equally afford relief where the contract has been made through the intervention of a court. And it has been intimated that relief might be granted in the case of a judicial sale under circumstances which would not justify the setting aside of a private sale. *Donaldson* v. *Young*, 7 Humph. 267; *Owen* v. *Owen*, 5 Humph. 355. One ground upon which relief has been sought, both in private and judicial sales, has been inadequacy of consideration. Mere inadequacy of price will not of itself suffice to set aside a contract of sale, though it is strong evidence of fraud or imposition, and when coupled with other, even slight, circumstances, may authorize rescission. *White* v. *Flora*, 2 Tenn. 426. If, indeed, the inadequacy be such as, in the language of Lord Hardwicke, "no man in his senses, and not under delusion, would make, on the one hand, and as no honest and fair man would accept, on the other" (*Earl of Chesterfield* v. *Janssen*, 2 Ves. 155); or such as, in the language of Lord Thurlow, "it would be impossible to state to a man of common sense without producing an exclamation at the inequality of it" (*Gwynne* v. *Heaton*, 1 Bro. C. C. 11); or such as, in the language of Lord Eldon, "shocks the conscience" (*Coles* v. *Trecothick*, 9 Ves. 246);—nothing more is required to entitle a party to relief. For, in such cases, fraud becomes a presumption of law. *Butler* v. *Haskell*, 4 Desau. 687. And relief may be had even at law. *James* v. *Morgan*, 1 Lev. 3. In *Herne* v. *Meers*, 1 Vern. 465 (*s. c.*, 2 Bro. C. C. 176, note), a contract of sale was set aside at the instance of the general creditors of the vendor, upon the ground that, "the premises purchased being worth more than double the money paid," the bargain "ought in conscience to be made void." In *Heathcote* v. *Paignon*, 2

Bro. C. C. 167, the sale of an annuity for the value of four years' purchase, which was worth ten years' purchase, or two and a half times more than the price paid, was set aside for inadequacy. These decisions were cited and approved in *Wright* v. *Wilson*, 2 Yerg. 294, where the sale of land worth $500 for only $50 was set aside; and again in *Coffee* v. *Ruffin*, 4 Coldw. 507, where an exchange of lands was rescinded, the property given being worth twice the estimated value, and three or four times the real value, of the property received. The sale set aside in *Wright* v. *Wilson* was made by a trustee, under a trust-deed for creditors, "in strict conformity with the provisions of the trust." In *Deaderick* v. *Watkins*, 8 Humph. 520, the contract of sale was of a fund in court between individuals, and the relief was rested principally on the inadequacy of price. The vendee had become a *quasi* party to the suit in which the fund arose, by purchasing property at a master's sale, and this position, it was strongly intimated, was sufficient to affect his conscience, because he would be compelled to apply to the court for the fund he had bought. There is also a marked distinction between rescinding a contract and specifically enforcing it, the court often refusing their aid to enforce, even when they would decline to rescind. *Humbard* v. *Humbard*, 3 Head, 100.

The same leading principles apply to the opening of biddings after confirmation which regulate the action of the court in the rescission or enforcement of private contracts. Although Lord Loughborough's opinion was in favor of the opening of biddings in such cases upon a mere advance, where the application was promptly made (*Chetham* v. *Grugeon*, 5 Ves. 86), yet the weight of authority is, as above stated, clearly otherwise. The courts, too, are careful in exercising the jurisdiction upon mere circumstances of neglect. *White* v. *Wilson*, 14 Ves. 151. Yet a considerable increase of price is a strong argument, when coupled with other, even slight, circumstances. *Watson* v. *Birch*, 4

Bro. C. C. 171; *s. c.*, 2 Ves. jr. 51; *Gower* v. *Gower*, 2 Eden, 356 (affirmed on appeal, 6 Bro. P. C. 306). If the inadequacy be so great as to avoid a contract *inter partes* on a presumption of fraud, the same inadequacy would be equally efficacious to open a master's sale, because it would be unconscientious in the purchaser to enforce it, or insist upon the rights thus acquired. *Gartside* v. *Isherwood*, 1 Bro. C. C. 561; *Osgood* v. *Franklin*, 2 Johns. Ch. 24; *Deaderick* v. *Watkins*, 8 Humph. 520. The character of the applicant for opening the biddings may also be looked to, in order to ascertain what degree of negligence is to be imputed. The courts in which the most rigid rules in regard to the rights of purchasers prevail have yielded to the application of infants, to whom no negligence can be imputed (*Williamson* v. *Dale*, 3 Johns. Ch. 292; *Duncan* v. *Dodd*, 2 Paige, 99); and to the appeal of a woman advanced in life. *Campbell* v. *Gardner*, 3 Stockt. 429. And the fact that the mortgagee is the purchaser at the judicial sale, instead of a stranger, is a strong consideration for regarding the application with indulgence, because he ought not to use his rights for any purpose of advantage beyond securing his debt, and should be satisfied if the fund for that purpose be increased without detriment to him. *Campbell* v. *Gardner*, 3 Stockt. 429; *Lansing* v. *McPherson*, 3 Johns. Ch. 424; *Collier* v. *Whipple*, 13 Wend. 228; *Tripp* v. *Cook*, 26 Wend. 156; *Mott* v. *Walkley*, 2 Edw. Ch. 624.

When we apply these principles to the case before us, it will be seen how strong is the equity to relief. The inadequacy of consideration is as great as in *Coffee* v. *Ruffin*, and much greater than in *Deaderick* v. *Watkins*, or in the English cases cited and approved in *Wright* v. *Wilson*. The negligence of the applicant was not greater than the negligence of the complainant, in the last-named case. Both were guilty of negligence; for the one, whose business called him from the state when his trust-deed was executed, should have appointed an agent to attend to his interests;

and the other ought to have been more attentive to his own business. The real equity in each case is the gross inadequacy of consideration, sufficient to make it unconscientious to claim the advantage. In this case, too, the purchaser is the mortgagee, whose position is such as to enable the court to affect his conscience. If the court had known of the inadequacy at the time, it would have refused to confirm the sale upon a far less advance of the bid. Why should it not do now what it would have done then, the large advance demonstrating the truth of the excuse given for the delay, and the application being *recenti facto?*

I am of opinion that, upon the strictest view of the purchaser's rights after confirmation, the relief asked for should be granted.

But the strictest view of the rights of a purchaser after confirmation arises only when the application is made at a term of the court subsequent to that during which the sale was confirmed. Such were all of our cases cited above. 1 Coldw. 194; 5 Sneed, 406; 5 Yerg. 240; 2 Sneed, 125. The new proceedings, in such cases, are in substance, whatever may be the form, an original suit for the rescission of the contract made by the confirmation, and executed by the decree. *Moore* v. *Watson,* 4 Coldw. 68; *Horn* v. *Denton,* 2 Sneed, 125; *Brown* v. *Frost,* 10 Paige, 245; *Campbell* v. *Gardner,* 3 Stockt. 427; *McMinn* v. *Phipps,* 3 Sneed, 196. Does the same strict view of the rights of the purchaser prevail when the application is made at the same term at which the sale was confirmed? It is well settled in this state — so well settled that, in the language of one of our most eminent judges, "it would be a waste of time to expatiate on the question"— that, during the term, the judgments and decrees of the court are in the breast of the judge, and may be changed, modified, or overruled by him. *Per* Turley, J., in *Timmons* v. *Garrison,* 4 Humph. 150. And see, to the same effect, *Abbot* v. *Fagg,* 1 Heisk. 749, and *Theavenought* v. *Hardeman,* 4 Yerg. 565. The

presiding judge may even set aside an appeal prayed and granted, after the right of appeal has been perfected by the execution of the required appeal bond, in order to enable him to change his rulings, and may then change them. *Hall* v. *Bewley*, 11 Humph. 106. And the power of the court over its own decrees during the term is well recognized. *Doss* v. *Tyack*, 14 How. 297. It was the practice in this court before I came upon the bench, and is, as we all know, the practice of our courts throughout the state, to have an informal call of the docket, for the purpose of confirming reports, disposing of unlitigated cases, and trying suits in which both sides are ready, before commencing the peremptory call. In this way most of the reports of sales are confirmed on the first day of the term. It is obvious that the presiding judges have no intention, by this course, of depriving parties interested of the right to advance the biddings, in proper cases, at any time during the term. The decrees cannot be executed, unless otherwise specially directed, until the close of the term, and they are subject to the control of the court for all the purposes of justice. By the common law, the term of a court is as one day, and this fiction still prevails when its observance tends to promote the ends of justice. *Porter* v. *Earthman*, 4 Yerg. 358. I have myself adopted the practice of calling the docket only once, and then peremptorily, and of not permitting reports to be confirmed, except by consent of parties, until the cause is regularly reached; but this has been done in order to simplify our business, to render the daily attendance of every member of the bar unnecessary, and to prevent the encumbering the minutes with reports and decrees of confirmation at the first of the term, many of which would be set aside as of course at a later day. In holding that the biddings may be opened upon a mere advance, our Supreme Court say: "This rule will be applied in cases where the proposal to open the biddings is made at the term of the court to which the

report of sale is made." *Click* v. *Burris*, 6 Heisk. 545.. In *Mann* v. *McDonald*, 10 Humph. 275, the application was after confirmation, but at the same term, and the action of the chancellor — in which the Supreme Court say they are not prepared to hold that he erred — was manifestly dictated by the fact that the decree of confirmation was, under his control. And in *Moore* v. *Watson*, 4 Coldw. 64, 68, the decision sustaining the opening of the biddings. after confirmation is put upon · the very ground that the application was at the same term, while " the record was. still under the control of the court, and he could, at his discretion, upon sufficient cause shown, change, alter, or modify his own decree." Chancellor Hanson, of Maryland, entertained similar views of his powers; for, after confirm-- ing a sale on December 1st, he did not hesitate to set the decree of confirmation aside, of his own motion, on the 4th of the same month. *Lawson* v. *The State*, 2 Bland,. 639, in note.

Under the usual practice in this state, the ends of justice require that the courts should consider applications to advance the biddings, made at any reasonable time during the term, as made before confirmation. Under the practice of this court, the applicant should be required to give a sufficient excuse for the delay in applying until after confirmation, and will, ordinarily, be put under the terms of paying the costs of the decree of confirmation, and of the subsequent proceedings to effectuate the sale.

In this instance, the amount of advance is so great as to demonstrate the good faith of the applicant and the truthfulness of his excuse, and the sale will be set aside, and the biddings opened for ten days, as if the application had been before confirmation.

I have cited *Houston* v. *Aycock*, 5 Sneed, 406, for the principle that it is not of course to open biddings after confirmation. The decision itself, upon the facts disclosed,. is one of the few decisions in our books which " shock the

·conscience." It is not in accord with the rulings of the ·courts in which the strictest views prevail of the rights of purchasers at masters' sales (*Duncan* v. *Dodd*, 2 Paige, 99 ; *Williamson* v. *Dale*, 3 Johns. Ch. 292), and is in conflict with other adjudications of our own court in analogous ·cases. *Donaldson* v. *Young*, 7 Humph. 266 ; *Mann* v. *McDonald*, 10 Humph. 275 ; *Horn* v. *Denton*, 2 Sneed, 125.