[No. 738.   August 25, 1897:]

## HORSE SPRINGS CATTLE COMPANY, Appellant, v. JOHN W. SCHOFIELD, Appellee.

JUDICIAL SALE—MOTION TO SET ASIDE — FINDINGS OF CHANCELLOR.
Held: While weight should be given to the findings of the chancellor, yet where, as here, on a motion to set aside a judicial sale, the proofs tended to establish the grounds alleged in the motion, or some of them, and no testimony was produced to the contrary, the chancellor could not disregard such proofs, except so far as they might be discredited in themselves or by other testimony.

ID.—MATERIAL ERRORS—UNCONSCIONABLE ADVANTAGE.—Held: That where, as here, a judicial sale of property is based upon material errors, which, if allowed to stand, would result in permitting the purchaser to enjoy an "unconscionable advantage," by the sacrifice of the property through such errors, the sale will be set aside. Blackburn v. Railroad Co., 3 Fed. Rep. 689.

*Appeal*, from an order denying a motion to set aside an order authorizing the receiver of defendant company to sell certain property of defendant, from the Second Judicial District Court, Bernalillo County.   Reversed and remanded, with directions.

The facts are stated in the opinion of the court.

WARREN, FERGUSSON & GILLETT for appellant.

If this court is satisfied, from the uncontradicted evidence in this cause that the form, manner or terms of the sale of January 16, 1896, were such in consequence of there not being required any public notice or competition, or any opportunity given to any one but Hayes to purchase the cattle, then the court should reverse this cause, wholly independent of any question of fraud, express or implied.   Schroeder v. Young, 161 U. S. 334; Graffan v. Burgess, 117 Id. 180. See, also, Smith on Receivers 89; High on Receivers, sec. 191, et seq.; Brittin v. Handy, 73 Am. Dec. 491, note.

CHILDERS & DOBSON for appellees.

BANTZ, J.—In a proceeding to foreclose a mortgage upon certain cattle and real estate of the Horse Springs Cattle Company one George Smith, its president, was appointed receiver, on the stipulation of the parties. This stipulation, which was signed by Smith for the company, authorized the receiver to round up such cattle as could be marketed, and dispose of them at public or private sale; the contract for the sale of such cattle to be first submitted to the court for approval, or to receive the written assent of Schofield, representing the mortgagee. Under that stipulation, an order of court was made March 28, 1894, authorizing Smith, as receiver to gather the cattle, and contract for the sale of the mortgaged property "to the best advantage;" such contracts to be submitted to the court for approval, unless assented to in writing by Schofield. Acting under this order, a number of cattle were gathered from time to time, and sold by the receiver. On January 16, 1896, the receiver, Smith, made an application for leave to sell the remainder of the cattle then on the range for $7,000, range delivery. In this application the receiver represented that it would be to the interest of all parties to accept the offer of $7,000. which he had received; that it was impossible to state how many cattle there were, but he did not believe there were one thousand head; that a sale upon the range would save considerable expense; and that he had submitted the proposition to complainant, Schofield, who was willing it should be accepted. On the same day an order of court was made reciting that the cause came on to be heard on this petition of the receiver, and that complainant, by his solicitor, appeared, and consented to it. The receiver was authorized to accept the offer, and report his doings to the court. On April 4, 1896, a motion was filed by the Horse Springs Cattle Company, praying the court to set aside the order authorizing Smith to make the sale for $7,000, upon the following grounds: 1. Said order was improvidently made, and without notice to or knowledge of the defendant, the Horse Springs

Cattle Company, or the attorneys, solicitors, officers, directors, or stockholders thereof. 2. There was at the date of said petition and order a much greater number than one thousand head of cattle belonging to defendant, the Horse Springs Cattle Company, and branded "Z. P.," in the charge of said receiver, upon the lands or ranches of said defendant company. 3. The amount of $7,000, alleged to have been offered to said receiver for said Z. P. cattle, is a wholly inadequate and insufficient price for the same, and said cattle could have been, and can now be, readily sold for a much greater sum in cash than $7,000.

At the time this motion was filed, no report had been made by the receiver as to his action under the order, but in a report which appears to have been sworn to on April 20, 1896, the receiver reports that on January 17 he sold the cattle to one H. A. Hayes for $7,000, cash, had received payment therefor, and had paid over the purchase money to Schofield on the mortgage debt.

On October 27, 1896, the court required the company to give bond in the sum of $15,000, conditioned that in the event the sale should be vacated the cattle shall realize on resale such sum in addition to $7,000, as will be sufficient to pay costs of resale and costs of receivership from January 16, 1896. The cause was referred to an examiner, to take proofs as to the number and value of the cattle, and all material facts in regard to the sale. The examiner took a large mass of testimony, and on June 7, 1897, the court heard the case on the testimony so taken, and found that defendant had failed to establish any of the grounds set forth in its motion, and the motion was overruled. Final decree has been entered. The question was brought here on appeal.

The testimony upon this motion was taken by an examiner, so that on appeal this court acts on the same information possessed by the court below. Oral testimony was not usually delivered by the witnesses before the chancellor, and hence the rule that on appeal the whole case on the law and the facts is considered, and, so far as it is essential to a proper

decision, an examination of the evidence will be made. 2 Fost. Fed. Prac. 8474; In re Neagle, 135 U. S. 42. It is undoubtedly true that weight should be given to the findings of the chancellor, coming, as they do, on appeal, clothed with the presumption of correctness in their favor, and that mere differences of opinion upon doubtful questions of preponderance of evidence would not justify us in overturning them. Loring v. Atterbury (Mo. Sup.), 39 S. W. 773; Richardson v. Payne (Ky.) 30 S. W. 879. We are not required to determine in this case how far an appellate court will review findings in such cases. In this case the proofs tended to establish the grounds alleged in motion, or some of them, and no testimony was produced to the contrary. These proofs the court below was not at liberty to disregard, except so far as they were discredited in themselves or by other testimony. The appellant introduced some six witnesses, who were more or less familiar with the company's cattle upon the range, and who estimated the number at from one thousand three hundred to two thousand head. The valuation put upon these cattle was about $10.25 on board of cars at Magdalena, at a cost of less than $1 per head. Some of this testimony as to number and value was not entitled to much weight, but some of it was given by credible witnesses, qualified to estimate the number and testify to value and such testimony was not incompetent. It was the best and only way, under the circumstances, by which the court could ascertain the truth. The receiver, Smith, merely estimated the number in his report, and says that it was "impossible for him to state how many cattle remain on said ranch," but did not "believe" there were more than one thousand head. It was upon that representation by the receiver, and upon the representation as to the best price obtainable (about $7 per head), that the court authorized the sale. We think that the evidence shows that the receiver, Smith, unduly underestimated the number of these cattle, and that to allow this sale to stand for $7,000, would result in a loss to the mortgagor of at least $7,000, if not a much larger

*(margin note:)* JUDICIAL sale: motion to set aside: findings of chancellor: evidence.

sum.   It was argued in favor of the purchaser that it was the
duty of appellant to be vigilant, and, after vesting discretion
in the receiver by the stipulation of March 24,
1894, to sell at private sale, complaint could not
be heard now.   But, even though the parties
and the court had given the receiver the widest
latitude of discretion, if the court should become advised that,
either from mistake or other cause, the receiver was disposing
of the property at a sacrifice, it would become the duty to stay
his hand.   The stipulation, however, directs Smith to "round
up such cattle as can be marketed," and these were the cattle
he was authorized to dispose of at private sale, cattle of a
definite number, actually gathered.   It did not authorize him
to sell at private sale all of the company's cattle, unnumbered
and scattered over the range; and it may not be unfair to
assume that appellant trusted to the stipulation as the limit
of its consent.   We do not, however, regard the stipulation
as the material thing, the important thing being that, if the
receiver was abusing his authority, it was the duty of the court
to interpose.   This duty did not depend upon proof of cor-
ruption or bad faith, but, even though the receiver acted by
mistake of fact, it would be equally the duty of the court to
protect the estate which it was administering.   The receiver
was trustee for all parties in interest.   It was his duty to see
that the property realized the highest sum, and it was the
duty of the court to see that he did.   McGown v. Sandford,
9 Paige 290; Brown v. Frost, 10 Paige 243.   There is a clear
distinction between sales made under execution and sales in a
proper sense called "judicial," made under decrees in chancery.
In the latter case the court, in a measure, is the vendor.   An-
derson v. Foulke, 2 Har. & G. 355.   In such cases the court
decreeing the sale has greater power over it, and the grounds
of interference are not so strict.   Daniel, Ch. Prac. 1285.
This was carried so far that formerly in England the court
would open the bidding upon a ten per cent increase over the
bid of the purchaser.   This practice has not, however, been
approved in this country, and it is perhaps well settled that

*Margin note: JUDICIAL sale: material errors: unconscionable advantage.*

mere inadequacy in price at public sales where the parties are adults will not be sufficient to deprive the purchaser of the fruits of his bargain.   In Blackburn v. Railroad Co., 3 Fed. 689, the court say:   "The best solution of the subject seems to be to hold closely to the public policy which protects the sales against instability, by refusing to set them aside unless the price offered in advance is so great in proportion to the bid already made that it affords substantial evidence that for some perhaps unknown reason the property has been greatly undersold; so much so that the purchaser has not simply a bargain with a fair margin of profit, but an unconscionable advantage of the parties for whose benefit the sale has been made."   In Williamson v. Dale, 3 Johns. Ch. 292, where the mortgagor had been innocently misled by the mortgagee as to the time of sale, Chancellor Kent ordered a resale, observing:   "There is no imputation of any unfair intention of the plaintiff or his solicitor, or of any unfair conduct at the sale (public); but I think that, under the circumstances, the defendants were innocently misled, without any culpable negligence to them."   See, also, McGown v. Sandford, 9 Paige 290; Brown v. Frost, 10 Paige 243.   In Anderson v. Foulke, 2 Har. & G. 356, Chancellor Bland, after alluding to the English rule in holding that it did not obtain in Maryland, says:   "But in this state, as well as in England, if there should be made to appear, either before or after the sale has been ratified, any injurious mistake, misrepresentation or fraud, the bidding will be opened, the reported sale will be rejected, or the order of ratification will be rescinded, and the property again sent into the market and resold."   In Deford v. Macwatty (Md.) 33 Atl. 488, the court says:   "The mistake or surprise or omission of duty or misconduct or fraud, such as will justify the interference of the court, will depend upon the particular circumstances, and, in dealing with all such questions, it must be borne in mind that sales of this kind are made by the court, through the receiver, as its agent, and made in behalf of the interests of all parties concerned;" and where, through some mistake, the

sale would, if consummated, result in serious sacrifice of the property, it will set the sale aside and order the property resold. Graffam v. Burgess, 117 U. S. 180, and Schroeder v. Young, 161 U. S. 337, were cases where the property had been sold at public sale on execution, and the question arose in new and distinct proceedings. In Graffam v. Burgess the general proposition is laid down that if, in addition to inadequacy of price, there be other circumstances throwing a shadow upon the fairness of the transaction, the courts will seize upon them to declare the sale invalid. In Schroeder v. Young, the court say: "While mere inadequacy of price has rarely been held sufficient, in itself, to justify setting aside a judicial sale of property, courts are not slow to seize upon other circumstances impeaching the fairness of the transaction as a cause for vacating it, especially if the inadequacy is so gross as to shock the concience."

We are of the opinion that the evidence shows that the order authorizing the receiver to sell these cattle was based upon great and material errors as to the number of cattle and to the reasonable value thereof, and that to refuse to set the sale aside would result in permitting the purchaser to enjoy "an unconscionable advantage" by the sacrifice of the property through such mistake. When Mr. Hayes bid upon this property, he submitted himself to the jurisdiction of the court as to all matters connected with the sale, and relating to him in the character of purchaser. Requa v. Rea, 2 Paige 339; Kneeland v. Trust Co., 136 U. S. 93. A resale should be granted, but out of the purchase money received from the sale the former purchaser, Hayes, shall be repaid the purchase price heretofore paid by him and interest thereon at six per cent per annum from the seventeenth day of January, 1896, and also his reasonable costs and expenses of defending the sale heretofore made to him, including his solicitor's fees in this and the court below. Williamson v. Dale, 3 Johns. Ch. 293; Duncan v. Dodd, 2 Paige 101. These costs and expenses will be ascertained and taxed by the court or judge of the Second

judicial district. The cause is therefore reversed and re-manded, to be proceeded with in accordance with this opinion.

Smith, C. J., and Laughlin, J., concur.