## HUNT *v.* WHITEHEAD.

EQUITY PLEADING AND PRACTICE; JUDICIAL SALES; INADEQUACY OF PRICE; SURPRISE; APPELLATE PRACTICE; REHEARING.

1. Exceptions by the owner of real estate to the report of a sale of the property by trustees under a decree passed in a foreclosure proceeding should not be referred to an examiner, unless actually necessary, but should be heard in affidavits.

2. A sale under a decree in foreclosure proceedings will not be set aside before confirmation for inadequacy of price, unless the inadequacy is so great as to shock the conscience, or unless there be additional circumstances against its fairness; but great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud.

3. Where the defendant in foreclosure proceedings in which, under a decree for sale, the trustees sold the property for $17,600, in support of exceptions to the sale, filed before final ratification, showed that she was misled and surprised at the failure at the last moment before the sale, of negotiations for a loan of $3,000 with which to make a payment on the mortgage debt and costs and expenses, in accordance with an arrangement with the creditor, and that persons intending to bid did not attend the sale, having been informed that it had been postponed, an order ratifying the sale was *reversed,* and the sale vacated upon terms prescribed by this court.

4. Where it is stated, in support of a motion for a rehearing, by the purchaser in such a case, that the defendant failing to give a *super-*

D. C.]                    Argument of Counsel.

*sedeas* bond, the purchaser, pending the appeal, complied with the terms of sale and by means of a writ of assistance was placed in possession of the property, and expended about $6,000 in improvements thereon, it was *held* that those facts could not affect the determination of the appeal or furnish ground for granting the rehearing, as they formed no part of the record on the appeal.

No. 1073.  Submitted November 7, 1901.  Decided December 4, 1901.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, overruling exceptions to and ratifying a sale of real estate under a decree in a foreclosure proceeding.                    *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. D. W. Baker* and *Mr. John C. Gittings* for the appellant:

1. When exceptions are filed to a trustees' report of sale, founded upon facts other than on the face of the report, the parties in support of the confirmation of the sale can file a demurrer or objection in law to the exceptions, or file an answer.  If an answer is filed an issue of facts is thereby raised, and the burden of proof is upon the exceptant, who has the right to take testimony in support of his exceptions. *Wagner* v. *Cohen,* 6 Gill, 75; *Bank of Commerce* v. *Lannahan,* 45 Md. 396.  In this case that the parties interested in the property had a right to be heard before the trustees' report of the sale was confirmed; and under the order *nisi,* the parties in interest were given until January 10, 1901, in which to file any objections they might have.  The appellant having filed exceptions and a petition supported by affidavits, and the appellee having filed an answer thereto, supported by affidavits, there was a clear issue of fact raised, and the right of the appellant to have a reference to an examiner to take proof in support of her exceptions and petition seems to be well settled in law.  *Anderson* v. *Foulke,* 2 Harris & Gill, 346–373; *State, to the Use of Brunner,* v. *Ramsburg,* 43 Md. 325; *Cohen* v. *Wagner,* 6 Gill, 75, 238.    The

court below erred in refusing to grant appellant's motion to refer the case to an examiner, and was without jurisdiction to determine the matter until an opportunity had been given appellant to take proof in support of her exceptions.

2. The status of the mind of Mrs. Hunt shows that, without any negligence on her part, she believed that the loan had been consummated, and that there would be no sale, and, believing this, so informed the would-be purchasers. Therefore, there can be no question about her status coming within the definition of mistake. *Garrett* v. *Moss,* 20 Ill. 549. There can be no doubt that on this record all parties at this sale, who took part in same, knew of this mistake, and that the sale should have been postponed until it could have been rectified, and it might here be stated, that if the affidavits are not fully clear on this subject, the exceptant had the absolute right, or has the absolute right, to have testimony taken on her exceptions, to prove exactly what the trustees knew at this time; what these bidders knew, and what Mrs. Whitehead and her attorney knew. While there are some authorities that attempt to hold that a mistake of this character is not sufficient, still, on examination of those authorities, it will be found that the particular mistake in those cases did not keep away bidders, and did not affect the sale of the property, and in those cases it is not shown that there was any one prepared to make a larger offer. In this case we show that there was before the sale, and is now, an offer for the property of $26,000, and we show by affidavits that the price $17,600 is " grossly inadequate," and if this case is being heard, as appellee insisted, upon the showing made by the appellant, then it must be admitted that the price for which the property sold is grossly inadequate.

While the courts do not vacate sales on the ground of mere inadequacy of price, still, where that price is grossly inadequate, or where there are any other circumstances that the court can seize upon to show any unfairness, the court will set aside the sale, and it is well established, that inadequacy of price will have a greater weight towards influencing a court to set aside a judicial sale, where the objections are urged

in opposition to the confirmation, than where it is urged as a ground for setting aside a sale after confirmation. *Jennings* v. *Dunphy,* 174 Ill. 86; *Latrobe* v. *Herbert,* 3 Md. Ch. 375; *Glenn* v. *Clapp,* 11 Gill & J. (Md.) 1; *Heintze* v. *Stingel,* 1 Md. Ch. 283.

It is well settled that where a greatly larger price is offered for the property, and such a price is secured, or offered to be secured, it is strong evidence that the price for which the sale was made is inadequate. *Kable* v. *Mitchell,* 9 W. Va. 492; *Connell* v. *Wilhelm,* 36 W. Va. 598; *Cockrell* v. *Coleman,* 55 Ala. 583; *Dewey* v. *Linscott,* 20 Kan. 684.

3. When we take into consideration the facts in this case, accompanied by the inadequacy of price, there can be no question but that a court of equity should interfere and order a resale of this property, or, upon proper showing, permit the person who has offered in this case $26,000 to purchase the property. The circumstances in this case would seem to warrant the interference of a court of equity, notwithstanding the fact that it may be contended that the mistake on the part of Mrs. Hunt was not brought home to the purchaser. *Graffam* v. *Burgess,* 117 U. S. 180. See also *Howell* v. *Baker,* 4 Johns. (Tenn.) 118; *Kloepping* v. *Stellmacker,* 21 N. J. Eq. 328; *Byers* v. *Surget,* 19 Howell, 303; *Brinan* v. *Nichols,* 115 Mass. 353; *Montague* v. *Dawes,* 14 Allen, 369; *Schroeder* v. *Young,* 161 U. S. 334.

*Mr. Nathaniel Wilson, Mr. H. B. Moulton* and *Mr. Clarence R. Wilson* for the appellee:

1. The court below did not err in overruling appellant's motion to have the cause referred to an examiner, to take testimony upon the issues of fact raised by the petitions and affidavits filed for and against the confirmation of the sale. A demurrer to exceptions is unheard of, and an answer to a petition or to exceptions is unnecessary. It is true that in Maryland, upon exceptions to a trustee's report being filed, a reference to an examiner is generally made to take testimony. In none of the cases cited upon the brief for the ap-

pellant, however, is it decided that this is the only proper way of procedure where a petition is filed asking that a sale be set aside. On the other hand, it is the almost universal procedure that, upon the hearing of ordinary petitions, as in the present case, the court is informed as to facts in issue by affidavits. 16 Encyc. of Pl. & Pr. 520–521; *Coxe* v. *Halstead,* 2 N. J. Eq. 311; 2 Daniell's Ch. Pl. & Pr. (6th Am. ed.) 1608. While the court may refer the case to an examiner to take testimony, yet such action rests in the sound discretion of the court below, and, owing to the expense and delay involved, should not be done except in extreme cases. Certainly the refusal to do so is not reversible error. *Martin* v. *Hodges,* 45 Hun, 38.

2. The court below did not err in refusing to set aside the trustees' sale, even if the petition and affidavits filed by Mrs. Hunt be taken as true and not controverted. *Anderson* v. *White,* 2 App. D. C. 408; *Wheeler* v. *McBlair,* 5 App. D. C. 375; *Insurance Co.* v. *Barker,* 17 App. D. C. 205. In considering whether or not a trustee's sale should be set aside, the court will be largely influenced by that public policy which demands that stability be given to judicial sales, and that the purchasers at such sales be treated with fairness and good faith by the court. Rorer on Judicial Sales (2d ed.), Sec. 110; *Cohen* v. *Wagner,* 6 Gill, 236; *Henderson* v. *Herod,* 23 Miss. 434; *Sowards* v. *Prichett,* 37 Ill. 517; *Harwood* v. *Cox,* 26 Ill. App. 374; *Quigley* v. *Breckinridge,* 180 Ill. 627; *Hubbard* v. *Jarrell,* 23 Md. 66; *Barling* v. *Peters,* 134 Ill. 606. The English practice of " opening biddings " prevails in only a few States in this country and is unknown in this jurisdiction. *Williamson* v. *Dale,* 3 Johns. Ch. 290. The present case is, in substance, an attempt to introduce this practice in the District of Columbia.

3. As to the alleged inadequacy of price. The cases cited by the appellant do not support their contentions. As opposed to their contentions, see *Cohen* v. *Wagner,* 6 Gill, 236; *Henderson* v. *Herod,* 23 Miss. 434; *Hubbard* v. *Jarrell,* 23 Md. 66.

4. The alleged bid made by Bradford was not such a bid as should induce the court to set aside the sale. His first offer contained in his affidavit filed with the petition was to pay Mrs. Hunt $26,000, " this offer to remain open until January 15, 1901." His second offer was made at the hearing on January 19th, and he stated that he was ready to make a deposit of $300 and to comply with any order the court makes within *a reasonable time.*

This offer does not in any way bind Bradford to make it good in case the sale should be set aside; he does not make clear the terms upon which he is willing to make payment; he limits the period during which his bid is open (in the first instance to January 15th, and in the second to a " reasonable time ") ; he offers no security or guaranty, as was offered in many of the cases cited upon the brief for the appellant, nor did he offer to make a deposit sufficiently large to satisfy and protect the interests of the various parties.

5. As to the alleged " mistake " on the part of the owner of the property, Mrs. Hunt. The alleged mistake was not of the kind which would justify the court in setting aside a trustee's sale. 2 Pomeroy Eq. Jurisp. (2d ed.), Sec. 856. In the present case, the so-called mistake of Mrs. Hunt was not as to any fact constituting " part of the very subject-matter " of the sale, *but was a mistake as to a collateral matter.* The injury, if any, caused to the appellant by her alleged mistake in thinking she had obtained the $3,000 from Staples, when, in fact, she had not, was due entirely to her own delay and negligence. It is well settled that where a mistake is caused by the want of that care and diligence in a transaction which should be used by every person of reasonable prudence, equity will not afford relief. 2 Pomeroy Eq. Jurisp. (2d ed.), Sec. 856.

6. If the petition and affidavits in support thereof filed by Mrs. Heintzelman, the purchaser, be considered, as they rightfully should, the proof is overwhelming that the sale was in all respects fair and proper, and the property sold brought a reasonable and adequate price.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The appeal in this case is from an order of the court below, ratifying a sale of certain real estate made under a decree of the court passed in a foreclosure proceeding. The sale was made by trustees on November 23, 1900; and the highest and best bid received at said sale was made by Mrs. Emily Heintzelman, who was reported as the purchaser of the property, at and for the sum of $17,600. The purchaser paid in cash $1,300 to the trustees; and while she had the option of paying one-third of the purchase money in cash, and the balance in one and two years, she wished to avail herself of the privilege of paying the entire amount in cash on the ratification of the sale by the court, and had made arrangements accordingly.

A *nisi* order of ratification was passed upon the report of sale, and upon the last day for showing cause against the ratification, Mrs. Martha C. Hunt, defendant in the equity proceeding and appellant on this appeal, filed her petition and exceptions to the report of sale of said property, and asked the court to set aside said sale, and to authorize the trustees to accept from the petitioner the amount of the trust, the interest thereon, and the cost and expenses of the suit, and to direct said trustees to deed the property to one Ben B. Bradford, or the petitioner, upon compliance with the terms of sale — thus entirely ignoring and putting aside all rights of the purchaser at the original sale.

The grounds of the exceptions as stated are these:

First, that Mrs. Hunt, the owner of the property, the appellant herein, was misled and surprised in the sale of the property, in this, that having made an arrangement, as she supposed and alleges, for obtaining a loan of $3,000, with which to make payment on the mortgage or trust debt, and costs and expenses, and thus stopping the sale; whereas, to her great surprise the negotiation for the loan failed of consummation at the last moment, and when she supposed that everything had been arranged for stopping further proceed-

ing with the sale, and that the parties interested in making the sale were content therewith. She also alleges and swears that persons intending to bid on the property did not attend the sale, owing to the fact that they had been informed that arrangements had been made whereby the sale would be postponed. Second, that the property was sold for a grossly inadequate price; and a party was produced who swears that the property was worth $26,000, and that he would give that sum for it, if he could get it without delay. He does not, however, obligate himself in any enforceable manner to purchase the property at that price at a resale, if such resale should be ordered.

The petition and exceptions of Mrs. Hunt were sworn to by her, and several affidavits of third parties were filed in support of the allegations of her petition. They all tend to show that an understanding prevailed that the sale would not go on in consequence of an arrangement that had been made by Mrs. Hunt for borrowing money to make a partial payment on the mortgage debt and interest. It is also shown that such an arrangement had been nearly consummated, but failed at the last moment before the sale, and when Mrs. Hunt had retired, supposing that everything was satisfactorily arranged for staying the sale. All the parties making affidavits in behalf of Mrs. Hunt swear that the price for which the property sold was largely inadequate. This, however, is a controverted question.

Nothing being done to stay or postpone the sale, it was proceeded with, with the result already stated, and which has been finally ratified by the court.

Mrs. Heintzelman, the purchaser, filed a petition as purchaser, insisting upon her rights as purchaser, and praying that the sale be finally ratified as reported. She alleges that the sale was in all respects fair and properly made, and that the property sold for a fair and adequate price. She sets forth fully the facts attending the sale, and she swears to the petition. With the petition were filed several affidavits of competent parties, in support of the facts alleged by her, and who swear that the property sold for a fair price.

Mr. Darlington, one of the complainants in the foreclosure proceeding, in which the decree for sale was made, also files an affidavit setting forth the facts of the case. He shows that considerable indulgence had been extended to Mrs. Hunt and her representatives, upon promises to pay interest and taxes, but which promises were never complied with. He states the circumstances attending the sale, and shows that the sale was in all respects perfectly fair and *bona fide*. He then proceeds to state:

" I further say that the interest upon the fifteen thousand ($15,000) dollar loan is now (January 18, 1901) nearly eighteen months in arrears; that the insurance upon the property has been renewed at the expense of the complainants; that the defendant, although procuring the issuance of the now current policy, having failed and refused to pay the same, the complainants making the necessary payment only after being notified by the insurance company that the policy would otherwise be canceled, and that the estate very urgently needs the interest in arrears. The complainants have no interest in the question whether the exceptions to the sale shall be allowed or disallowed, nor any wish to interfere with any opportunity to the defendant to obtain a larger price, provided they, or the estate which they represent, shall not be involved in further postponements and delays; but they do object to any interference with the sale, upon so slight a guaranty to them as would be afforded by a deposit of three hundred dollars, as proposed by the exceptor. On the contrary, it is submitted that, if the court shall be of opinion that the defendant may be allowed to avail herself of the alleged larger offer for the property, consistently with the rights of the purchaser at the sale, the relief which she asks should be conditioned upon the payment to the complainants, or into the registry of the court, of a sum fully sufficient to indemnify against the contingency of failure by the alleged new bidder to consummate the sale, and against that of a less favorable resale at auction in that event, and upon the further condition that, out of the sum so deposited or otherwise, complainants may

immediately be paid the arrears of interest upon the incumbrance, the overdue taxes and insurance."

With all this proof before the court, a motion was made, after the case had been taken up for argument, as stated in argument in this court and not denied, for a reference to an examiner to take proof on the exceptions filed to the sale. The motion was denied, and we think very properly so. Such a reference ought not to be made, in such a case as the present, unless actually necessary for the purpose of obtaining evidence deemed essential for the action of the court, as such references are most generally attended with considerable delay,— a consequence very often desired to be accomplished by some of the parties to such proceeding. The practice as it prevails generally is to have such exceptions upon affidavits, as in the case of *Williamson* v. *Dale,* 3 Johns. Ch. 290, before Chancellor Kent, or, according to the Maryland Chancery practice, where proof is necessary, by an order giving leave to either party to take depositions before a justice of the peace, on three days' notice thereof to the opposite party, to be read at the hearing of the exceptions, set down for hearing at a particular day. *Andrews* v. *Scotton,* 2 Bland, 629, 631; *Anderson* v. *Foulke,* 2 H. & G. 346. But we think the facts are sufficiently developed in this case, on the affidavits filed, to enable the court to dispose of the exceptions.

1. The alleged inadequacy of price alone and apart from all other considerations, presented by the facts, would make no such case as would for a moment entitle the exceptant to relief. Nothing short of such inadequacy of price as would shock the conscience of the court, or furnish ground for believing that there was fraud, collusion, or bad faith, or gross neglect of duty, in making the sale, will justify the court in setting it aside upon that ground alone. Here there is no pretense or suggestion that there was any want of good faith or fairness in making the sale, either on the part of the trustees or the purchaser at the sale. If, therefore, the exceptions to the sale can be sustained in any view of the case, it must be on the ground of the alleged surprise of Mrs.

Hunt in the failure of her arrangement to obtain the money to stop the sale.

In the case of *Graffam* v. *Burgess,* 117 U. S. 180, 191, the Supreme Court of the United States, in an opinion by Mr. Justice Bradley, has examined and discussed this question with great care and fullness. In that case it was said by the court:

" It was formerly the rule in England, in chancery sales, that until confirmation of the master's report, the bidding would be opened upon a mere offer to advance the price 10 *per centum.* 2 Dan. Ch. Prac. (1st ed.) 924, (2d ed.) 1465; Sug. V. & P. (14th ed.) 114. But Lord Eldon expressed much dissatisfaction with this practice of opening biddings upon a mere offer of an advanced price, as tending to diminish confidence in such sales, to keep bidders from attending sales, and to diminish the amount realized. *White* v. *Wilson,* 14 Ves. 151; *Williams* v. *Attenborough,* Turner & Russ, 70; *White* v. *Damon,* 7 Ves. 30. Lord Eldon's views were finally adopted in England, in the sale of land by auction act, 1867, 30 & 31 Vict. Ch. 48, Sec. 7, so that now the highest bidder at a sale by auction of land, under an order of court, provided he has bid a sum equal to or higher than, the reserved price (if any), will be declared and allowed the purchaser, unless the court or judge, on the ground of fraud or improper conduct in the management of the sale, upon the application of any person interested in the land, either opens the biddings, or orders the property to be resold. 1 Sug. V. & P. (14th ed.) 114, note a.

" In this country Lord Eldon's views were adopted at an early day by the courts, and the rule has become almost universal, that a sale will not be set aside for inadequacy of price, unless the inadequacy be so great as to shock the conscience, or unless there be additional circumstances against its fairness; being very much the rule that always prevailed in England as to setting aside sales after the master's report had been confirmed." For these propositions a large number of American cases are cited. ·

The court further proceeds: " From the cases here cited we may draw the general conclusion that, if the inadequacy

of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason, misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold. Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud."

This we must take as the established rule in the Federal chancery jurisdiction, and it is the established rule that prevails in this country generally, as shown by the cases cited in the opinion from which we have just quoted. In addition to those there cited, we may cite the cases of *Cohen* v. *Wagner,* 6 Gill, 236; *Johnson* v. *Dorsey,* 7 Gill, 269.

2. But there are other circumstances in the case, apart from the alleged inadequacy of price, which must be allowed to have some force, independently of the supposed inadequacy of the price received. As we have seen, Mrs. Hunt alleges and swears that she was greatly surprised at the turn that the negotiation for the $3,000 loan took, and she has furnished independent evidence of the circumstances of the negotiation, and the ground that she had for supposing that the arrangement was completed, and that the sale would be stopped; and upon that understanding parties intending to bid for the property remained away from the sale. It is true, as said by Chancellor Kent, in the case of *Williamson* v. *Dale,* 3 Johns. Ch. 290, the question is not free from difficulty, and in order to furnish relief upon the ground of surprise, the principle is required to be pushed to the utmost verge of an admissible interference. But, following the precedent of that case, we think the sale ought to be set aside. In the case referred to of *Williamson* v. *Dale,* the executors of a mortgagor were innocently misled, and induced to believe that the sale of the mortgaged premises would not take place on the day appointed, there being no culpable negligence on their part, the court, under the cir-

cumstances of the case, ordered the sale to be set aside on the ground alone of surprise, but on terms prescribed in the order, though the sale was perfectly regular and fair, and no unfair intention was imputed to the mortgagee or his solicitor.

But while we think that, under the circumstances of the case, the sale should be set aside, yet it should be done conditionally, that is to say, on condition that Mrs. Hunt pay into the registry of the court as a deposit the sum of $3,000, within fifteen days from the date of the mandate of this court to the court below, to be applied to the payment of overdue taxes on the mortgaged or trust property, and to the extinguishment of accrued interest on the mortgage debt, and to reimburse the plaintiffs in the decree for any money that they may have been required to pay for insurance on the property, and the balance of said $3,000 to be applied as a credit upon the principal of the mortgage debt. And on the further condition that she shall pay the interest on the money paid by the purchaser, Mrs. Heintzelman, to the trustees, and all costs and expenses to which she has been subjected by reason of becoming such purchaser, to be taxed according to law. This is required, as Mrs. Hunt has had the occupancy of the property now for a year since the sale. And if these conditions are complied with, within the time prescribed, the trustees acting under said decree, shall be at liberty to proceed to resell the said mortgaged or trust property in the manner as directed by said decree; and the costs and expenses attending the said sale made to Mrs. Heintzelman shall be included in the costs and expenses of the suit, including the cost of the present appeal, and be paid out of the proceeds of sale of the property. But if these conditions are not complied with, within the time prescribed, then the said order of final ratification of sale shall be reinstated by the court below, and the same shall stand as if never appealed from; and the costs of the present appeal shall be paid by the appellant. The foregoing conditions are in accordance with the terms prescribed in allowing resale in the cases of *Watson* v. *Birch,* 4 Bro. C. C. 172, 178; *S. C.,* 2 Ves. Jr. 51, and *Williamson* v. *Dale,* 3 Johns. Ch. 290.

The order appealed from is reversed and the cause remanded that the same may be proceeded in in accordance with the foregoing opinion; and it is so ordered.

*Order reversed and cause remanded.*

On December 5, 1901, a motion for rehearing was made on behalf of the appellees.

On April 1, 1902, the motion was denied, Mr. Chief Justice ALVEY delivering the opinion of the Court:

Shortly after the opinion in this case was filed, it was brought to our attention that we were in error in supposing that Mrs. Hunt, the appellant, was still in the possession of the property that had been sold to Mrs. Heintzelman, and therefore the former ought not to be required to pay interest on the part of the purchase money that was shown by the record before us to have been paid by Mrs. Heintzelman, as one of the conditions upon which the order appealed from was reversed. Mrs. Heintzelman, the purchaser, has made a motion for a rehearing of the appeal taken by Mrs. Hunt, and by that motion and in support thereof, she has brought to the attention of this court the proceedings that took place in the court below subsequent to the order of ratification of the sale, and subsequent to the entry and perfection of the appeal, by Mrs. Hunt, from the final order of ratification to this court. In the appeal there was no *supersedeas* bond given by Mrs. Hunt to stay the proceeding in the court below, pending the appeal to this court, but the appeal was duly entered on the day of the passage of the order of ratification of the sale, and an appeal bond for costs was filed a few days thereafter, thus entitling her to prosecute her appeal, and the appeal was duly prosecuted, and the order of ratification appealed from was reversed on conditions prescribed.

The petition of Mrs. Heintzelman for rehearing of the case presented by the appeal of Mrs. Hunt, shows that the decree under which the sale was made required the purchaser to pay the purchase money, the one-third in cash,

9

and the residue in one and two years, with interest from the day of sale, secured by a deed of trust upon the property, or all cash, at the option of the purchaser. That, after the final order of ratification of the sale, and after the appeal was taken therefrom by Mrs. Hunt, Mrs. Heintzelman, the purchaser, paid the purchase money in full, and thereupon received from the trustees making the sale, a deed of the property, and duly recorded the same, and that the purchase money has been paid over in discharge of the mortgage. That she applied to the court and obtained therefrom the writ of assistance, after the appeal had been perfected, under which she was placed in possession of the property by the marshal; and that after being thus placed in possession, and during the pendency of the appeal, she expended, according to her statement, about $6,000 in improvements on the property. All this was done after the appeal was entered and during its pendency.

Whatever may be the effect of these subsequent proceedings upon the rights of the parties, even if such proceedings had been produced before us at the hearing of Mrs. Hunt's appeal, they could not have affected or influenced the determination of that appeal, nor can they in any manner furnish ground for granting a rehearing of that appeal. These proceedings all having taken place subsequent to the order of ratification and the entry of the appeal therefrom, they formed no part of the record upon which that appeal could have been considered. Mrs. Heintzelman is placed in an unfortunate predicament; but there is no relief that this court can afford her on the record now before us. Whatever relief may be open to her, whether it be as equitable assignee or by way of subrogation, she must apply to the court below, by an appropriate proceeding for the purpose. Of course, if Mrs. Hunt should fail to comply with the conditions prescribed by this court in the reversal of the order of ratification of the sale to Mrs. Heintzelman, the sale will stand confirmed as originally made, and in that event the difficulty as to Mrs. Heintzelman's position will be avoided. The conditions prescribed, however, must be modified to the extent

of relieving Mrs. Hunt from the obligation of paying interest to Mrs. Heintzelman on the purchase money paid by the latter to the trustees; but Mrs. Hunt must, in addition to other terms prescribed, pay and fully reimburse Mrs. Heintzelman all sums of money that she may have paid on account of taxes due upon the property, and also for money paid for any and all reasonable insurance of the property, as money paid for and to the use of Mrs. Hunt, she being required, by covenant in the deed of trust, to pay all taxes and insurance on the property.

With this modification of the terms or conditions upon which the order of ratification was reversed by this court, the motion for rehearing must be denied; and it is so ordered.

*Motion for rehearing denied.*